**Carzell MOORE, Plaintiff,**

**v.**

**Walter D. ZANT, Warden, Defendant.**

**Civ. A. No. 81–73–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

March 31, 1988.

---

2. *See Mark Smith Construction Co., Inc.,* 248 Ga. at 695, 285 S.E.2d at 693.

Richard H. Burr, III, NAACP Legal Defense Fund, Inc., New York City, Ralph Goldberg, Atlanta, Ga., Robert E. Morin, Washington, D.C., for plaintiff.

Susan V. Boleyn, Atlanta, Ga., for defendant.

OWENS, Chief Judge:

Pursuant to instructions from the Eleventh Circuit, this court held, on February 11, 1988, an evidentiary hearing into the question of whether any *Brady/Giglio*-type evidence was improperly withheld from petitioner Carzell Moore. Both the state and counsel for petitioner have had an opportunity to submit the evidence that they consider relevant to the court's present inquiry, and, after reviewing this evidence, the court is now prepared to render its opinion on the subject.

### Giglio Claims

The facts relating to the charges against Mr. Moore and the circumstances surrounding his arrest have been more than adequately stated by the Eleventh Circuit in *Moore v. Kemp,* 809 F.2d 702 (11th Cir. 1987). The court, therefore, will not go into these matters again; rather it will proceed directly to the issues pertaining to Mr. Thomas Pasby's testimony, specifically, whether there was any exculpatory evidence improperly withheld from petitioner prior to his trial.

A.  Was there a "deal" between Mr. Pasby and the state?

Petitioner asserts that the evidence presented to this court demonstrates, at minimum, an informal deal between the state and Mr. Pasby, whereby the state would not revoke Mr. Pasby's probation should he decide to cooperate in the Carzell Moore case. Petitioner contends that the existence of this deal has been demonstrated by the fact that despite clear evidence of probation violations, no revocation of probation proceedings were brought against Mr. Pasby. In addition, petitioner points to the statement found in Mr. Pasby's probation file that says the "Sheriff said he would put in a good word for him when his case comes up because of his cooperation." Based upon all of these facts, petitioner asserts that a *Brady/Giglio* violation has occurred.

The evidence presented by the state indicates, however, that no deal was ever made by any of the prosecuting attorneys involved in this matter. Mr. Pasby denied that he was promised anything for his testimony in the Carzell Moore case. Mr. Pasby stated that the only reason he did testi-

fy was to tell the truth and to avoid being falsely accused of Ms. Teresa Carol Allen's murder. Mr. Byron Smith, the district attorney that prosecuted Carzell Moore, testified that his office had made no deals with Mr. Pasby for his cooperation. Judge Phillip Raymond West, the district attorney in Bleckley County, Georgia at the time of petitioner's trial, also stated that Mr. Pasby's cooperation in the Carzell Moore case did not, in any way, influence his decision to either drop or bring probation revocation proceedings against Mr. Pasby. The court, therefore, finds as a matter of fact that there was no deal struck by any of the state prosecutors involved in this matter with Mr. Pasby for his cooperation in the Carzell Moore case. The next question then, is whether the statements made by Sheriff Coley constituted an agreement under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

■ In Mr. Pasby's probation file, Mr. Rodney Baker, the probation officer for Mr. Pasby, wrote a report stating,

1–13–77 Discussed Thomas with Investigator Jamison of Bleckley Sheriff's Office. He feels they have a good case against Thomas, but adds that Thomas has been very cooperative with them in a wide ranging investigation of stolen firearms, one of which may be murder weapon in the Teresa Allen case.

2–8–77 Spoke with Thomas in jail. Told him Sheriff said he would put in a good word for him when his case comes up because of his cooperation.

Unfortunately, Mr. Baker is deceased and, therefore, cannot be questioned further on the substance of the statements made to him by Sheriff Coley. Sheriff Coley did, however, testify about what he told Mr. Pasby. According to Sheriff Coley's testimony, whenever a prisoner approaches him requesting that a good word be put in for him, if the prisoner has been cooperating, Sheriff Coley said he would convey this fact to the proper authorities. He further said that he gave such information only so that these authorities could make an appropriate decision in that prisoner's case. Sheriff Coley said that these statements were not intended to cause the authorities to make a deal, nor was Mr. Pasby given the impression that Sheriff Coley would help him in getting more favorable treatment. Under these facts, the court must find that Sheriff Coley's statements did not constitute a promise, and, therefore, no *Giglio* violation can be found.

In support of this conclusion, the court finds particularly appropriate the Eleventh Circuit's decision in *McCleskey v. Kemp*, 753 F.2d 877 (11th Cir.1985), *aff'd*, 481 U.S. ——, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). In this case, the circuit court found one detective's statement to the prisoner that he would "speak a word" for him simply did not constitute a promise that would trigger the application of *Giglio*. *Id.* at 883–84. As in that case, the statement made by Sheriff Coley offered such a marginal benefit, if any, to Mr. Pasby that it is simply impossible to find that this statement motivated Mr. Pasby to testify or that disclosure of the statement would have had any effect on his credibility. *Id.*

■ Even if this court were to assume, arguendo, that Sheriff Coley's statement was a promise cognizable under *Giglio*, petitioner would still have to demonstrate a "reasonable likelihood" that the state's failure to disclose the Sheriff's offer to "put in a good word" affected the judgment of the jury. The jury was apprised of Mr. Pasby's entire criminal record, and petitioner's counsel attempted to show that Mr. Pasby was testifying simply to protect himself from possible criminal charges. Substantial impeachment evidence was, thus, before the jury. In light of the substantial impeachment evidence that was disclosed to the jury in petitioner's case, the court must conclude that the undisclosed statement by Sheriff Coley could not have affected the jury's assessment of Mr. Pasby's credibility.[1]

---

1. For the same reasons, the fact that the state did not disclose to petitioner the possible probation violation by Mr. Pasby is simply not significant in this case since the jury already had

■ Finally, the mere fact that Mr. Pasby ultimately did not have his probation revoked is simply not sufficient to demonstrate that a deal was struck, either formally or informally, by Mr. Pasby and the state. On the contrary, after listening to the evidence on this subject, the court is persuaded that the real reason why the revocation of probation proceedings against Mr. Pasby was never carried out is two-fold:

First, the theft by taking charge that caused the revocation of probation proceedings to be initiated in the first place was found to be unprovable; and

Second, given the short time remaining on Mr. Pasby's probation, the state simply did not find Mr. Pasby's other conduct eggregious enough to warrant reinitiating the revocation of probation proceedings against him.

In other words, Mr. Pasby was not given any more favorable treatment than other probationers with similar violation problems. Accordingly, petitioner's *Giglio* claims must be DENIED in their entirety.

### Sentencing Violations

The circuit court has held in this case that petitioner is entitled to a new sentencing proceeding. For the reasons stated in the circuit court's order, petitioner within 180 days after this order becomes final by failure to appeal or by mandate of the circuit court of appeals, shall be afforded a new sentencing phase trial, failing which upon motion a writ of habeas corpus discharging him from custody shall issue.

evidence before it that could have led it to conclude that Mr. Pasby was testifying solely to prevent criminal charges from being brought against him. Evidence that Mr. Pasby was trying to avoid having his probation revoked as well would, then, only be cumulative. In addition, petitioner's counsel was fully aware of Mr. Pasby's theft by taking conviction, yet he did not attempt to discover from Mr. Pasby the circumstances of that conviction or the type of sentence that he received. Had petitioner's counsel asked these questions, the information concerning Mr. Pasby's probation would have been revealed.