953 A.2d 1248

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Thomas W. HAWKINS, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 20, 2006.

Decided Aug. 19, 2008.

&#128273;1586

David Lee Zuckerman, Esq., Philadelphia, for Thomas W. Hawkins.

Amy Zapp, Esq., Patricia Eileen Coonahan, Esq., Montgomery County District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

Justice EAKIN.

Appellant was convicted of first degree murder for the choking death of Andrea Thomas and sentenced to death. At appellant's 1990 trial, a witness named Malcolm Tucker testified that when appellant was incarcerated pending trial, he admitted his guilt to Tucker; at the time, Tucker was in prison awaiting trial on sexual assault charges.

Appellant appealed his conviction, and this Court remanded for a new trial, determining the trial court committed reversible error when it allowed certain evidence to be introduced at trial. *See Commonwealth v. Hawkins*, 534 Pa. 123, 626 A.2d 550 (1993). Upon retrial in 1994, appellant was again convicted of first degree murder and sentenced to death. Tucker died before appellant's second trial, but his testimony from the first trial was read to the jury. This Court affirmed the conviction; the United States Supreme Court denied *certiorari*. *See Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998).

Appellant filed a timely petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.*, which the PCRA court dismissed following an evidentiary hearing. This Court affirmed. *See Commonwealth v. Hawkins*, 567 Pa. 310, 787 A.2d 292 (2001). Appellant filed a federal *habeas corpus* petition, and his execution was stayed pending those proceedings.

In the course of discovery related to the *habeas* action, appellant deposed Bruce Castor, the Montgomery County assistant district attorney (later district attorney) who prosecuted appellant at his 1990 trial and 1994 retrial. In his deposition, Castor acknowledged he testified at Tucker's sentencing hearing for the sexual assault charges. When asked how he came to testify at Tucker's sentencing, Castor replied:

A.   I was subpoenaed.

Q.  Did he have a deal with you guys?  Did Mr. Tucker have a deal or some kind of arrangement with Montgomery County . . . in exchange for his testimony?

A.  Mm-hmm. Sure.

Q.  What was that?

A.  [T]he deal that he had was that he would testify on our behalf and . . . I would testify concerning how it is that he cooperated with us in an open plea before the judge.

We don't get involved in saying, "If you do this for us, you'll get this or you'll get that."  We just—we'll make your corporation [sic] known to the judge if you testify on behalf of the Commonwealth.

Q.  Now, were you aware that Mr. Tucker was looking for that sort of consideration when he first came to the attention of the detective?

A.  Well, I don't know what he knows, but what I do know is . . . what we told him;  as, in fact, we tell everybody in this situation.  We're not giving any kind of—specific proposal here.

What we will say is, "If you have information of value and we think it's truthful and we utilize it, we will bring your level of corporation [sic] to the attention of your sentencing judge."

And I remember I testified at his sentencing, and I think the judge gave him six months off for cooperating.

Deposition of Bruce L. Castor, Jr., 10/28/03, Appellant's Brief, Exhibit 3, at 55–57.

Appellant alleges this testimony revealed the existence of a deal between the Commonwealth and Tucker, which the Commonwealth improperly concealed from the defense.  Appellant filed a second PCRA petition December 26, 2003, asserting Castor's deposition testimony constituted "material impeachment evidence," and that the Commonwealth was bound to disclose the existence of this "deal" under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

90

Without conducting a hearing on the issue of jurisdiction, the PCRA court assumed the petition was timely.[1] PCRA Court Opinion, 10/31/05, at 1. The PCRA court then considered the merits of the claims raised, and dismissed appellant's petition without conducting an evidentiary hearing. On appeal, this Court reversed and remanded on the basis the PCRA court failed to adequately set forth the reasons for its dismissal, and because the court failed to provide appellant with notice of its intention to dismiss and 20 days to respond before its dismissal, as required by Pa.R.Crim.P. 909(B)(2). *See Commonwealth v. Hawkins*, 583 Pa. 104, 876 A.2d 365 (2005).

On remand, the PCRA court issued a memorandum and order stating its intention to dismiss appellant's petition and allowed appellant 20 days to respond. Having determined appellant's response failed to establish any genuine issue of material fact and that any further proceedings would serve no legitimate purpose, the court dismissed the petition without an evidentiary hearing. *See* PCRA Court Opinion, 10/31/05, at 3. Appellant filed the instant appeal.

On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error. *Commonwealth v. Breakiron*, 566 Pa.

---

1. All petitions filed under the PCRA, including second or subsequent petitions, must be filed within one year of the date the judgment becomes final, unless the petition alleges, and the petitioner proves, an exception to the one-year time period. 42 Pa.C.S. § 9545(b); *Commonwealth v. Abu–Jamal*, 941 A.2d 1263, 1265 n. 4 (Pa.2008). The exceptions apply where the petition alleges and proves:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

323, 781 A.2d 94, 97 n. 4 (2001). A second or subsequent request for relief under the PCRA will not be entertained unless the petitioner presents a strong *prima facie* showing that a miscarriage of justice may have occurred. *Commonwealth v. Carpenter*, 555 Pa. 434, 725 A.2d 154, 160 (1999).

Appellant argues the PCRA court erred in dismissing the petition without a hearing, and asserts he is entitled to relief, "based on newly discovered evidence that the Commonwealth engaged in misconduct and violated *Brady v. Maryland*, [373 U.S. 83, 83 S.Ct. 1194 (1963)] and *Giglio v. United States*, [405 U.S. 150, 92 S.Ct. 763 (1972)] when it failed to disclose that the district attorney agreed to testify on behalf of a key prosecution witness at the witness' sentencing hearing. . . ." Appellant's Brief, at 3. Appellant fails to state under which substantive provision of the PCRA he asserts he is eligible for relief. Rather, he cites the PCRA generally as providing the basis for his requested relief.

In response, the Commonwealth correctly points out appellant's petition was not filed within one year of the date his sentence became final, which occurred April 20, 1998—the date the United States Supreme Court denied *certiorari*. This petition was not filed until December 26, 2003. Where, as here, a claim is not raised in a timely petition, the petitioner must allege and prove one of the three exceptions to the PCRA's timeliness requirements applies. 42 Pa.C.S. § 9545(b)(1). Where the petition invokes one of these exceptions, the petition must be filed within 60 days of the date the claim could have first been presented. *Id.*, § 9545(b)(2).

Appellant's petition cites the timeliness exceptions set forth in § 9545(b)(1)(i) and (ii). He provides the following four paragraphs in support of his assertion that the claims raised in his petition are timely and properly before the court:

28. Although the instant Petition is filed more than a year after Petitioner's conviction became final, the above-cited exceptions apply to Petitioner and renders his filing timely. This claim could not have been presented before this time, as a result of government interference.

92

29. This Petition alleges that the Commonwealth failed to disclose substantial exculpatory material in violation of *Brady v. Maryland*, and its progeny. Such claims fit into subsection (b)(1)(i) because "the failure to raise the claim[s] previously was the result of interference by government officials—[the Brady violations] with the presentation of the claim[s]." The claim also fits into subsection (b)(1)(ii) ("the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.")

30. Petitioner is indigent, incarcerated, not learned in the law, and has consistently exercised due diligence in seeking appointment of counsel, investigation of his case, and vindication of his rights.

31. This claim could not have been presented prior to the time when Mr. Castor admitted to having a deal with Mr. Tucker (who died prior to Petitioner's second trial).

PCRA Petition, 12/26/03, at 9–10.

The PCRA court "assumed that the petition was timely under 42 Pa.C.S. § 9545(b)(1) because it alleged that the prosecutor ... had improperly concealed the existence of a plea agreement between the Commonwealth and one of its key witnesses, Malcolm Tucker[,]" PCRA Court Opinion, 10/31/05, at 1–2, but the court failed to explain or justify this assumption. However, it is well-settled that the PCRA's timeliness requirements are jurisdictional in nature and courts may not address the merits of the issues raised in a petition if it is not timely filed. *See, e.g., Commonwealth v. Abu–Jamal*, 574 Pa. 724, 833 A.2d 719, 723–24 (2003); *County of Allegheny v. Commonwealth*, 507 Pa. 360, 490 A.2d 402, 406 n. 2 (1985) (jurisdiction may be raised *sua sponte* by court). The PCRA court lacked jurisdiction to rule on the merits of the instant petition as it was untimely and did not fall under any exception; however, the court failed to conduct the threshold timeliness inquiry. We therefore vacate the PCRA court's order, and will now address the timeliness issue based on the two exceptions cited in the petition.

This Court has repeatedly stated it is the appellant's burden to allege and prove that one of the timeliness exceptions applies. *See, e.g., Commonwealth v. Beasley,* 559 Pa. 604, 741 A.2d 1258, 1261 (1999). Appellant's petition appears to claim the alleged *Brady* violation falls within both the governmental interference exception and the newly-discovered evidence exception to the one-year filing period. Although a *Brady* violation may fall within the governmental interference exception, the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by government officials, and that the information could not have been obtained earlier with the exercise of due diligence. *Breakiron,* at 98. The newly-discovered evidence exception requires that the facts upon which the *Brady* claim is predicated were not previously known to the petitioner and could not have been ascertained through due diligence. *Commonwealth v. Lambert,* 584 Pa. 461, 884 A.2d 848, 852 (2005); *see also Commonwealth v. Chester,* 586 Pa. 468, 895 A.2d 520, 523 (2006).

Appellant claims the facts upon which his *Brady* claim is based were first revealed in Castor's 2003 deposition testimony, and were therefore unknown to him, and due diligence would not have revealed them before that time. Appellant alleges Castor admitted during his deposition there was a deal with Tucker whereby Castor would testify on Tucker's behalf at his sentencing hearing. Appellant's Brief, at 11. He asserts since the Commonwealth had previously denied any agreement was made with Tucker, Castor's deposition revealed this information for the first time. Appellant's claim is belied by the record.

In his 1997 direct appeal, this Court rejected appellant's double jeopardy claim, which was based on the allegation the Commonwealth failed to disclose a leniency agreement with Tucker. *Hawkins,* at 552. We reasoned:

[t]he Commonwealth has consistently maintained that it has no record reflecting any plea agreement with Tucker and that it never promised Tucker leniency in return for his testifying against appellant. Under these circumstances, we

decline to find ... a *Brady* violation occurred since appellant again offers nothing other than mere conjecture that such an arrangement existed.

*Id.*

The facts set forth in Castor's 2003 deposition are in accord with this. It shows neither a plea agreement with Tucker, nor a promise of leniency. It does not reveal any additional support for appellant's *Brady* claim. The deposition merely restated the same facts appellant had known since 1990 and 1991—that Castor informed Tucker his testimony as a Commonwealth witness would be made known at Tucker's own sentencing hearing. Castor's 2003 deposition testimony simply reaffirmed the facts expressed in his earlier testimony at Tucker's 1991 sentencing hearing and Tucker's testimony at appellant's 1990 trial and 1994 retrial. Tucker testified:

Q. Why did you decide at that point to cooperate with the police?

A. I didn't want him on the street.

Q. Are there any other reasons that you would want to cooperate with the police?

A. I would hope that some consideration would be taken in my case.

Q. Have any promises been made to you to get you to testify?

A. No.

Q. Have any threats been made to you to get you to testify?

A. No, there have not.

Q. Has there been given any inducements to you whatsoever to get you to testify?

A. None at all.

N.T. Trial, 8/7/90, at 25–26.

Although Tucker admitted he was hopeful his cooperation would be looked upon favorably at his own sentencing, he expressly stated no promises, threats, or inducements were made to secure his testimony. Castor's testimony at Tucker's

1991 sentencing hearing does not add to this. Castor merely informed the sentencing court that Tucker testified for the Commonwealth at appellant's trial, and the information he provided was helpful in securing appellant's conviction; this testimony was given pursuant to a subpoena by Tucker's attorney, not as a deal offering leniency for favorable testimony. Specifically, at Tucker's sentencing Castor testified:

Q. And was his testimony helpful in obtaining a conviction for Mr. Hawkins?

A. Yes, it was.

Q. A little helpful? Significantly helpful?

A. Well, you have got to understand that we had already arrested Hawkins so at some time prior to the trial and prior to his arrest I had come to the conclusion Mr. Hawkins was going to be convicted. I learned about the evidence that Mr. Tucker had for us after his arrest; therefore, I can't say I wouldn't have won the case without him but he was a significant piece of evidence in the prosecution and as it turned out the defendant bolstered his testimony because the defendant said he had never spoken with Mr. Tucker and I could prove that Mr. Tucker had spoken with the defendant. So it did help significantly.

Q. So Tucker's credibility was important to the case also?

A. Yes, it was.

Q. Did you ask Mr. Tucker why he was testifying?

A. Yes, I asked him on a number of occasions prior to the trial and also under oath in the courtroom.

Q. And what was his answer?

A. Well, he told me that he was approached by Hawkins because Hawkins knew your client did private investigating work and he was going to help Mr. Hawkins out. He was going to help Hawkins out in this case. He began to take notes and as he was learning from Hawkins what the crimes were he told me that his opinion changed and he thought Mr. Hawkins was a pretty bad criminal and he wanted to do something to try to stick it to him, as it

were. And I said, now, that's not the only reason. And he said, no, I hope that a day like today would come where I would testify in mitigation of any crimes he is charged with. So it was both reasons.

N.T. Tucker Sentencing, 5/20/91, at 17–18.

Again, this testimony was given in 1991; appellant was retried in 1994. While he raised the issue of a deal with Tucker throughout his direct appeal and his PCRA proceedings, appellant did not depose Castor until 2003 in his federal action. While Justice Saylor's concurring opinion suggests the evidentiary record of the District Attorney's policy to cooperate at sentencing with potential witnesses has not been established, Justice Saylor's Concurring Op., at 1257, there is much evidence confirming this hardly uncommon policy, and no evidence to the contrary.

The "deal" alleged was not a unique windfall for Tucker; it was apparently a standard matter. As Castor testified:

[W]e told him; as, in fact, we tell everybody in this situation. We're not giving any kind of—any specific proposal here. What we will say is, "If you have information of value and we think it's truthful and we utilize it, we will bring your level of corporation [sic] to the attention of your sentencing judge."

Deposition of Bruce L. Castor, Jr., 10/28/03, Appellant's Brief, Exhibit 3, at 56–57.

If this is truly a "deal," it was not a deal specific to Tucker—it is a deal offered to "everybody in this situation." To find to the contrary would require a finding that District Attorney Castor perjured himself, and even appellant does not suggest this. To say a deal offered to everyone was not discoverable with the exercise of due diligence is unrealistic. Indeed, had Tucker's counsel wished to provide his sentencing judge with his cooperation, he could do so by exactly the means used here—subpoena the prosecutor. No "deal" was needed.

As Castor did testify at Tucker's 1991 public sentencing, the testimony was in public records. *See generally Chester*, at 523 ("[F]or purposes of ... § 9545(b)(1)(ii), information is not

'unknown' to a PCRA petitioner when the information was a matter of public record."). While the 1990 and 1991 testimony did not reveal details of an "agreement," the *facts* upon which the claim is predicated are obviously present in the 1990 and 1991 testimony discussed above, and were certainly discoverable with any diligence at all. Since Castor's 2003 deposition testimony simply reflects the same information appellant had known since 1990 and 1991, we reject appellant's claim that the facts in the 2003 deposition were previously unknown to appellant and could not have been obtained a decade earlier with the exercise of due diligence.

While Justice Saylor's thoughtful discussion of the appropriate interpretation of *Giglio* is intriguing, *see* Justice Saylor's Concurring Op., at 1256–57, the level of specific disclosure generally required for a routine, non-promissory arrangement between the Commonwealth and a witness is not squarely before us. As concerns timeliness under the PCRA, the standard is whether the existence of the purported agreement could have been "ascertained by the exercise of due diligence[,]" 42 Pa.C.S. § 9545(b)(1)(ii), one year from when appellant's sentence became final April 20, 1998. *Id.; Murray,* at 202. As discussed above, there is no evidence suggesting the facts underlying appellant's claim were not ascertainable as early as 1990 and 1991. Further, the fact that such "deals" between the Commonwealth and witnesses were universally available is fatal to appellant's claim here. *See* Justice Saylor's Concurring Op., at 1257. Even if we were to speculate a *Giglio* violation occurred, appellant would have had to raise that claim for PCRA purposes within one year from when his judgment of sentence became final on April 20, 1998.

Therefore, appellant has not established his claim falls within either the newly-discovered evidence exception or the governmental interference exception to the PCRA's timeliness requirements. Because the PCRA court was thus without jurisdiction to consider the merits of this petition, *see Abu–Jamal,* at 723–24, we vacate that court's order and dismiss this petition as time-barred. The Prothonotary is directed to transmit the complete record in this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).

Order vacated. Petition dismissed. Jurisdiction relinquished.

Madame Justice Greenspan did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justice McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion in which Justice BAER joins.

Justice TODD files a concurring opinion.

Justice SAYLOR, concurring.

While I join in the result reached by the lead Justices, I respectfully differ with the reasoning concerning the Commonwealth's agreement with Malcolm Tucker. In contrast to the view expressed by the lead opinion, I believe that the evidence of a pre-existing agreement between Tucker and the Commonwealth as reflected in the District Attorney's 2003 deposition testimony constituted a factual predicate for Appellant's claim that is distinct from either Tucker's earlier statement regarding his subjective hope of favorable treatment at his sentencing hearing or the District Attorney's subsequent testimony at that hearing.

The underlying principles governing Appellant's claim were initially set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), wherein the United States Supreme Court held that due process is offended when the prosecution withholds favorable evidence to an accused that would tend to exculpate him or reduce the penalty imposed. *See id.* at 87–88, 83 S.Ct. at 1196–97. Several years later, the Court extended this rule to embrace certain impeaching evidence, including that which might demonstrate witness bias. *See Giglio v. United States,* 405 U.S. 150, 155, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). This determination relied in part on the Court's prior decision in *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), in which it observed that "[t]he jury's estimate of the truthfulness and reliability of

a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."

In the present matter, the prosecutor apparently promised Tucker that he would personally appear and testify at his sentencing hearing and make his cooperation in Appellant's trial known to the court. Tucker therefore would have had more than a subjective hope of receiving consideration. In my view, under *Brady, Giglio*, and their progeny, the Commonwealth should have revealed this information so the jury could have more completely assessed Tucker's credibility.[1] Indeed, the District Attorney directly acknowledged that Tucker's testimony was an important factor in the Commonwealth's case against Appellant. *See* Lead Opinion, *op.* at 1254 (quoting *Commonwealth v. Tucker*, Nos. 5163–90 & 2150–90, N.T., May 20, 1991, at 17–18). While I agree with the lead Justices that this case does not involve a promise of leniency or a plea agreement, the prosecutor's promise to appear at Tucker's hearing was clearly relevant to Tucker's motivation to testify at Appellant's trial. *See Strong*, 563 Pa. at 464, 761 A.2d at

1.  I recognize that courts have differed in the application of *Giglio* in the context of less formal arrangements between government agents and cooperating witnesses. *See generally* R. Michael Cassidy, *"Soft Words of Hope:" Giglio, Accomplice Witnesses, and the Problem of Implied Inducements*, 98 Nw. U.L.Rev. 1129, 1152–57 (collecting cases and discussing problems in the application of *Giglio* ). Several courts have narrowly construed *Giglio* as only requiring the disclosure of explicit agreements. *See, e.g., Tarver v. Hopper*, 169 F.3d 710 (11th Cir.1999); *Moore v. Zant*, 682 F.Supp. 549 (M.D.Ga.1988). Other courts, however, have interpreted the case as mandating the disclosure of inducements that do not rise to the level of express offers. *See, e.g., Campbell v. Reed*, 594 F.2d 4 (4th Cir.1979); *Commonwealth v. Hill*, 432 Mass. 704, 739 N.E.2d 670 (2000); *People v. Diaz*, 297 Ill.App.3d 362, 231 Ill.Dec. 523, 696 N.E.2d 819 (1998). I favor the latter approach, as I believe that it constitutes a more effective means of addressing the credibility/impeachment concerns that underlie the *Giglio* holding. *See, e.g., Commonwealth v. Strong*, 563 Pa. 455, 469, 761 A.2d 1167, 1175 (2000) (observing that a tentative commitment from a prosecutor might be more likely to encourage false testimony from a cooperating witness than a firm promise, since the witness will have a greater incentive to curry favor with the prosecutor if a specific agreement has not yet been reached).

1172 (observing that "due process requires that any potential understanding between the prosecution and a witness be revealed to the jury").[2]

The Supreme Court of Georgia addressed a similar question in *Patillo v. State*, 258 Ga. 255, 368 S.E.2d 493 (1988), where, in exchange for a witness' testimony, two assistant district attorneys agreed to inform the judge who had previously revoked the witness' probation in a separate matter that the witness testified favorably in the case at hand. In their discussions with this witness, the assistant district attorneys specified that they would not make a specific recommendation to the judge; rather, they would leave the decision to the judge whether or not to reinstate his probation. *See Patillo*, 368 S.E.2d at 497. The trial court determined that this evidence should have been disclosed by the prosecution, observing that "the state should have revealed the agreement no matter how non-promising the agreement was in terms of its prospects for the witness." *Id.* at 498. The Supreme Court of Georgia agreed with the trial court's reasoning and conclusion in this regard. *See id.* at 497. I find such analysis to be persuasive as the plain terms of *Napue* and *Giglio* require the disclosure of impeachment evidence. Accordingly, I believe that the district attorney's agreement with Appellant, notwithstanding its "non-promissory" nature as to Tucker's ultimate sentence, should have been disclosed.

That being said, in addition to discussing the agreement between the Commonwealth and Tucker in his 2003 deposition, the District Attorney also stated that his office routinely indicated its willingness to cooperate at sentencing with poten-

2. Indeed, the District Attorney acknowledged that such agreements are relevant to a witness' credibility: "[W]henever I have had situations where I have sources like this testifying, you always bring that out in the direct evidence, what the situation is that he's expecting to get as a result of testifying, because you've got to explain to the jury what, you know, what potential motives he might have to be biased in our favor or whatever." Oral Deposition of Bruce L. Castor, Jr., Oct. 28, 2003, at 59. When the District Attorney was asked whether this particular agreement was placed on the record, he indicated that, "I probably put it on the record at the—when he testified. It was—it has always been my practice to bring that out in court, say it right there on the record." *Id.* at 58.

tial witnesses who could provide valuable testimony. The lead opinion concludes that this effectively undermines Appellant's assertion that he could not have discovered evidence of the agreement prior to 2003, reasoning that it would be unrealistic to conclude that a deal that was offered to everyone was not discoverable with the exercise of due diligence. I agree that the existence of such a policy would be fatal to Appellant's claim, since it could presumably have been ascertained through due diligence. *See* 42 Pa.C.S. §§ 9545(b)(1)(i), (ii).[3] Notably, however, the PCRA court did not make a specific factual finding regarding the existence of this policy. Indeed, since the PCRA court assumed the timeliness of Appellant's petition and dismissed it without an evidentiary hearing, the record has been insufficiently developed to evaluate this question, or to assess the other timeliness issues involved in this case.

Given that the timeliness of Appellant's petition implicates the subject matter jurisdiction of both this Court and the PCRA court, a remand of this matter for further proceedings might generally be warranted. However, in light of the other substantial evidence offered against Appellant at trial, I would ultimately conclude that Appellant has not established the degree of prejudice necessary to obtain post-conviction relief, despite my belief that the Commonwealth should have revealed its agreement with Tucker. *Accord Patillo*, 368 S.E.2d at 498 (implementing a similar disposition based on the reasoning that the outcome of the trial would not likely have been different, as, *inter alia*, the agreement was of a non-promissory nature and the witness was otherwise impeached by the revelation of his own criminal record). This analysis also applies to Appellant's assertion that the prosecutor impermissibly elicited false testimony by asking Tucker whether he had been offered any inducements to testify and failing to correct Tucker's response that he had not. *See* N.T., August 16, 1994,

3. I also differ with the lead opinion's use of the term "newly discovered evidence" in referencing Section 9545(b)(1)(ii), *see* Lead Opinion, *op.* at 1252–53, as I believe that the use of this short-hand is unnecessary and confusing in light of this Court's decision in *Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264 (2007).

at 414. The United States Supreme Court has observed that, "[e]ven in cases of egregious prosecutorial misconduct, such as the knowing use of perjured testimony, we have required a new trial only when the tainted evidence was material to the case." *Smith v. Phillips*, 455 U.S. 209, 220 n. 10, 102 S.Ct. 940, 947 n. 10, 71 L.Ed.2d 78 (1982) (citing *Giglio*, 405 U.S. at 154, 92 S.Ct. at 766, *Napue*, 360 U.S. at 272, 79 S.Ct. at 1178). In this regard, the Court explained that the effect of the prosecutor's alleged misconduct on the trial (rather than the misconduct itself) constitutes the crucial inquiry for purposes of due process. *See id.* Therefore, assuming, *arguendo*, the existence of subject matter jurisdiction,[4] I concur with the lead Justices that Appellant's present claims do not give rise to a basis for relief.

Justice BAER joins this concurring opinion.

Justice TODD.

I join the Opinion Announcing the Judgment of the Court in its result, as I agree Appellant has failed to establish his Post

4. This Court has not directly addressed whether Pennsylvania courts may forego the resolution of a complex jurisdictional matter in favor of a disposition based on the clear-cut merits of an underlying substantive issue. Traditionally, however, the federal courts could exercise such "hypothetical jurisdiction" pursuant to *Norton v. Mathews*, 427 U.S. 524, 532, 96 S.Ct. 2771, 2775 (1976) (permitting federal courts to "reserv[e] difficult questions ... of jurisdiction when the case alternatively could be resolved on the merits in favor of the same party"). This practice was significantly curtailed in *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), which held that, at least in the context of Article III jurisdictional questions, the exercise of such jurisdiction was improper. Notably, though, the *Steel Company* decision did not specifically preclude the application of "hypothetical jurisdiction" in cases that did not implicate Article III. As such, several intermediate federal courts have continued to exercise such jurisdiction in situations involving statutory, rather than constitutional, jurisdictional matters. *See, e.g., Royal Siam Corp. v. Chertoff*, 484 F.3d 139 (1st Cir.2007), *Abimbola v. Ashcroft*, 378 F.3d 173 (2d Cir.2004), *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402 (3d Cir.2003). In my view, this approach constitutes a reasonable means of insuring judicial economy in cases involving clearly meritless claims, and, furthermore, it comports with this Court's similar practice of permitting the resolution of waiver issues through reference to the merits of an underlying claim. *See Commonwealth v. Hughes*, 581 Pa. 274, 304 n. 13, 865 A.2d 761, 779 n. 13 (2004).

Conviction Relief Act ("PCRA") petition was timely filed. My reasoning somewhat differs, however.

Contrary to the lead opinion's characterization, I agree with the conclusion of Mr. Justice Saylor in his concurring opinion that "the evidence of a pre-existing agreement between Tucker and the Commonwealth as reflected in the District Attorney's 2003 deposition testimony constituted a factual predicate for Appellant's claim that is distinct from either Tucker's earlier statement regarding his subjective hope of favorable treatment at his sentencing hearing or the District Attorney's subsequent testimony at that hearing." Concurring Op. at 1. Nevertheless, Appellant was obliged to prove why, with the exercise of due diligence, he could not have obtained Castor's deposition testimony prior to 2003. As Appellant does not assert, let alone prove, that he could not have sought, or that he sought and was denied, such discovery prior to this time, he fails to fulfill the due diligence requirement. For this reason, I agree with the lead opinion Appellant has failed to establish his PCRA claim falls within any of the timeliness exceptions to the PCRA, and that his PCRA petition was, therefore, untimely filed.