**[J-46-2013][M.O. – Todd, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 659 CAP |
| | : | |
| Appellee | : | |
| | : | Appeal from the Order entered on |
| v. | : | 3/28/12 in the Court of Common Pleas, |
| | : | Criminal Division of Delaware County at |
| | : | No. CP-23-CR-0005045-1997 |
| ARTHUR BOMAR, | : | |
| | : | |
| Appellant | : | SUBMITTED: April 29, 2013 |

**CONCURRING OPINION**

**MR. JUSTICE SAYLOR**          **DECIDED: November 21, 2014**

I join the majority opinion. My only comment pertains to Part II(A), concerning whether an agreement existed between prosecutors and David O'Donald. See Majority Opinion, slip op. at 15. Based on the evidence outlined by the majority, I am of the opinion that O'Donald had an understanding, known to both state and federal prosecutors, that if he testified against Appellant at trial, the district attorney would provide a favorable recommendation to federal counsel in support of a further reduction of his sentence. This is the type of scenario which, to my mind, requires disclosure, so as to reveal to the jury the motivations and, thus, any possible bias, a testifying witness may harbor.[1] In this regard, it appears that the PCRA court focused too stringently on

---

[1] As explained in my concurring opinion in Commonwealth v. Hawkins, 598 Pa. 85, 99 n.1, 953 A.2d 1248, 1256 n.1 (2008) (Saylor, J., concurring), courts have differed in the application of United States v. Giglio, 405 U.S. 150, 92 S. Ct. 763 (1972), in the context

(continued…)

the notion of a "promise" in the contractual sense of that term. See Commonwealth v. Bomar, No. 5045-97, slip op. at 49, 51 (C.P. Delaware Sept. 4, 2012). To the contrary, this Court has emphasized that such an agreement "need not be a formal, signed document, but may be simply a promise or an understanding that the prosecution will extend leniency and favorable treatment in exchange for a witness's testimony." Commonwealth v. Spotz, 616 Pa. 164, 201, 47 A.3d 63, 84 (2012). Accordingly, I would conclude that the prosecution failed to disclose the existence of an agreement for leniency with one of its testifying witnesses in violation of Brady. Nonetheless, I agree with the majority that Appellant has failed to establish the degree of prejudice necessary to obtain post-conviction relief relative to either his guilt- or penalty-phase claims.

---

(…continued)

of such less formal arrangements between government agents and cooperating witnesses. See generally R. Michael Cassidy, "Soft Words of Hope:" Giglio, Accomplice Witnesses, and the Problem of Implied Inducements, 98 Nw. U.L.Rev. 1129, 1152-57 (collecting cases and discussing problems in the application of Giglio). Although some courts have narrowly interpreted Giglio as only requiring the disclosure of explicit agreements, see, e.g., Tarver v. Hopper, 169 F.3d 710 (11th Cir. 1999); Moore v. Zant, 682 F.Supp. 549 (M.D. Ga. 1988), others have viewed Giglio as mandating disclosure of inducements that do not rise to contract-like agreements. See, e.g., Campbell v. Reed, 594 F.2d 4 (4th Cir. 1979); Commonwealth v. Hill, 739 N.E.2d 670 (Mass. 2000); People v. Diaz, 696 N.E.2d 819 (Ill. 1998). I am on record as favoring the latter approach, since I believe that it constitutes a more effective means of addressing the credibility and impeachment concerns that underlie the Giglio holding. See, e.g., Commonwealth v. Strong, 563 Pa. 455, 469, 761 A.2d 1167, 1175 (2000) (observing that a tentative commitment from a prosecutor might be more likely to encourage false testimony from a cooperating witness than a firm promise, since the witness will have a greater incentive to curry favor with the prosecutor if a specific agreement has not yet been reached).