J-S80011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ANDREW POOLE | : | |
| | : | |
| Appellant | : | No. 760 EDA 2017 |

Appeal from the PCRA Order February 7, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002735-2008

BEFORE:  BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                         **FILED MARCH 27, 2018**

Andrew Poole appeals from the PCRA court's order granting the Commonwealth's motion to dismiss his PCRA petition.  We vacate and remand for further proceedings.

We previously set forth the factual background pertinent to this matter:

> On September 24, 2007, at approximately 3:00 p.m., a gunman with a bandana covering his face opened fire at the Tustin Recreation Center playground in the city of Philadelphia. Carl Wallace sustained multiple gunshot wounds but survived. Mehkee Gatewood, who was only 18 months old at the time of the shooting, was also struck in the foot and arm.  Although no one was able to positively identify the gunman, he was seen running from the direction of the playground after the shooting. Appellant came to believe that Tremayne Walker ("Walker") had told police that he was involved.
>
> On November 11, 2007, not far from the Tustin playground at the corner of 61st and Oxford streets, Walker was shot to death.  Before he died, Walker told multiple eyewitnesses, including Officer Robert Saccone, Alice Holmes ("Holmes"), and

his friend Terrell Watson ("Watson"), that it was [Appellant] who had shot him. [The victim] told Holmes, "If I die, Andrew Poole shot me." When Officer Saccone, who was only two blocks away at the time of the shooting and arrived immediately thereafter, asked Walker who shot him, Walker replied, "Drew Poole got me." Walker died from injuries sustained from three gunshot wounds.

. . . .

On December 10, 2008, [Appellant] was found guilty of murder in the first degree for the shooting death of Walker, possessing an instrument of crime ("PIC"), firearms not to be carried without a license, and intimidation of a witness or victim. The jury was unable to reach a verdict on the charges related to the September 24, 2007 playground shooting.

On June 18, 2009, [Appellant] was sentenced to life imprisonment for first-degree murder, followed by 10 to 20 years for witness intimidation. Appellant's sentences on the remaining convictions were run concurrently.

*Commonwealth v. Poole*, 30 A.3d 527 (Pa.Super. 2011) (unpublished memorandum at *1-4). Appellant's conviction was largely based on testimony provided by Watson at the preliminary hearing, which stated that Walker had identified Appellant as his assailant immediately prior to his death. Watson's testimony during the preliminary hearing was read into the record at trial when Watson failed to appear to testify, and the Commonwealth could not locate him despite a diligent effort to do so.

Appellant appealed his judgment of sentence, and we affirmed. *Poole*, *supra*. On March 1, 2012, the Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Poole*, 40 A.3d 1235 (Pa. 2012). On February 14, 2016, Appellant filed a counseled PCRA petition

- 2 -

alleging that he received an affidavit from Watson in which Watson recanted his testimony indicating that Walker had identified Appellant as his shooter on the night in question. Watson also averred that Officer Saccone coerced him to falsely identify Appellant as the shooter. Appellant appended Watson's affidavit to the PCRA petition and argued that his petition was timely filed pursuant to the newly-discovered fact and governmental interference exceptions to the PCRA's statutory time bar.

On August 16, 2016, the Commonwealth filed a motion to dismiss Appellant's PCRA petition, arguing that Appellant's petition was untimely, and that he failed to establish any of the exceptions to the PCRA's statutory time bar. On November 29, 2016, the PCRA court filed Rule 907 notice of its intent to dismiss Appellant's petition without a hearing, stating that Appellant's petition was untimely, and his issues were without merit. On February 7, 2017, the PCRA court granted the Commonwealth's motion to dismiss, and this timely appeal followed. Appellant complied with the court's order to file a Rule 1925(b) concise statement of errors complained of on appeal, and the court authored its Rule 1925(a) opinion. This matter is now ready for our review.

Appellant raises three questions for our consideration:

I.      Whether the PCRA court erred when it granted the Commonwealth's motion to dismiss without first holding a hearing to determine the credibility of the Affiant?

II.     Whether the facts presented in Terrell Watson's affidavit, which must be accepted as true for purposes of ruling on

the Commonwealth's motion to dismiss, are sufficient to establish exceptions to the PCRA's one year time bar for governmental interference and/or newly[-]discovered fact?

III.  Whether the facts presented in Terrell Watson's affidavit, which must be accepted as true for purposes of ruling on the Commonwealth's motion to dismiss, are sufficient to establish the conviction was obtained by the knowing use of perjured testimony suborned by a police officer?

Appellant's brief at 2-3.

Our scope and standard of review of decisions denying relief pursuant to the PCRA is well-settled. Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. *Commonwealth v. Chmiel*, 173 A.3d 617, 624 (Pa. 2017). Our review of questions of law is *de novo*. *Id*. at 625. Under Pennsylvania Rule of Criminal Procedure 907, the PCRA court may dismiss a petition without a hearing if, after reviewing the petition, it is "satisfied from this review that there are no genuine issues concerning any material fact," and thus, the defendant is not entitled to relief. Pa.R.Crim.P. 907(1). When performing this review, the court must find that "the facts alleged would not, even if proven, entitle the defendant to relief[.]" *Id*. at comment.

We must first consider Appellant's second issue, as it concerns our jurisdiction over this matter. A PCRA petition, including a subsequent or serial petition, must be filed within one year of the date that a defendant's judgment of sentence became final, unless an exception to the one-year

time restriction applies. 42 Pa.C.S. § 9545(b)(1). This time bar is jurisdictional in nature. Whether a petition is timely is a matter of law. *Commonwealth v. Hudson*, 156 A.3d 1194, 1197 (Pa.Super. 2017).

Appellant concedes that his petition is facially untimely. When a PCRA petition is facially untimely, the petitioner must plead and prove that one of the statutory exceptions applies. *Id*. If no exception applies, then the petition must be dismissed, as we cannot consider the merits of the appeal. *Id*. The PCRA reads, in relevant part:

(b)     Time for filing petition.-

(1)     Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment of sentence becomes final, unless the petition alleges and the petitioner proves that:

i.     the failure to raise the claim previously was the result of interference by the government officials with the presentation of the claim in violation of the Constitution or law of the United States;

ii.     the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

iii.     the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2)     Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b)(1) and (2).

Appellant claims that the PCRA court erred in dismissing his petition since there remain genuine issues of material fact that, if true, would establish an exception to the PCRA's time bar. In his petition, Appellant pled facts implicating the newly-discovered fact and governmental interference exceptions to the PCRA time bar. We discuss each in turn.

The newly-discovered fact exception, as set forth in § 9545(b)(1)(ii), requires a petitioner to plead and prove: (1) he did not know the fact(s) upon which he based his petition; and (2) he could not have learned those fact(s) earlier by the exercise of due diligence. ***Commonwealth v. Shiloh***, 170 A.3d 553, 558 (Pa.Super. 2017). Due diligence, in this context, obliges the petitioner "to take reasonable steps to protect [his] own interests." ***Id***. (citation omitted). Nevertheless, it does not demand "perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." ***Id***. (citation omitted). As such, "the due diligence inquiry is fact-sensitive and dependent upon the circumstances presented," and "[a] petitioner must explain why she could not have learned the new fact earlier with the exercise of due diligence." ***Id***. (citation omitted).

Appellant appended to his PCRA petition a signed and notarized affidavit provided by Watson on January 15, 2016. He highlighted the following statements made within the affidavit:

When I [(Watson)] got to the corner, Tremayne was running toward me, he was out of breath and bent over. I asked what happened and he said I'm shot. I'm shot and then he fell to the ground. I then asked him repeatedly, who shot you, was it Drew but he was incoherent while trying to speak and I could not understand what he was saying.

The Philadelphia Police arrived and they were trying to talk to Tremayne but he was still incoherent and the police asked him who shot him but he was not able to answer. Tremayne just rolled on the ground in pain. The ambulance then arrived and took him away. When the ambulance left, the police officer asked everyone there, does anyone know anything and I said yes. I explained to the officer that I believe [Appellant] shot my friend over a previous argument.

The officer then asked me did Tremayne tell me that [Appellant] shot him and I said he was trying to say something but no he did not. The officer then told me that [Appellant] needed to be off the street and that will only happen if I will say Tremayne told me [Appellant] shot him. At first, I told the officer that I did not think that was the right thing. The officer told me he was aware of [Appellant] and officers were looking for him already. The officer then said [Appellant] had shot up a playground with children in it, he has just shot your friend, so what is there to say he will not shoot you next.

The officer said it would not be smart to make a statement if I did not say I heard Tremayne say [Appellant] shot him. Because [Appellant] would probably come looking for me and my family. So I agreed to make the statement and he drove me down there. I went to Homicide and told the Detective what the officer had instructed me to say. I then went home for the night. Over the next few weeks, I got a call to come and testify at the preliminary hearing and I did so and said what the officer told me to say which was Tremayne said [Appellant] shot him. When it was time for the trial, I felt guilty and did not go back thinking the case would be thrown out without me being present and I did not want to lie under oath again. Over the next nine years I felt bad but I was living my own life and it was an afterthought.

Around March of 2015, I received a phone call from an old friend from the neighborhood named "P" telling me that

> [Appellant's] sister was filing an appeal for him and wanted to know if I would talk to an investigator on [Appellant's] behalf and I agreed because I am a more mature person now and I have found a higher power. Also, I was in the military which gave me some core beliefs regarding honesty and integrity.
>
> For this reason, I felt I had no other choice but to right my wrong and tell the 100% truth.

Appellant's brief at 9-11.

Appellant maintains that he filed the instant PCRA on February 14, 2016, within sixty-days of his receipt of Watson's affidavit. He claims that, prior to receiving Watson's affidavit, he could not have known that Watson had lied at the preliminary hearing, and could not otherwise have compelled him to recant his testimony. Thus, he relies on the date Watson signed his affidavit as the triggering event for his obligation to file a PCRA pursuant to the newly-discovered fact exception.

The PCRA court determined that Watson's affidavit failed to satisfy the newly-discovered fact exception, and thus, his PCRA petition was barred by the statutory time bar. It found that Appellant had not acted with due diligence since he had been friends with Watson since 1998, and thus, could have contacted him prior to the date Watson provided the affidavit. The court also noted that Appellant did not aver what steps he took to locate Watson. In addition, it found that Appellant did not allege when he actually learned of Watson's false testimony. The court notes that, since Watson agreed to meet with an investigator in March 2015, Appellant should have filed his petition within sixty days of March 2015 because he could have

learned of the information contained in Watson's affidavit at that time. Hence, the court concluded that Appellant's petition was time-barred.

Instantly, Appellant offered Watson's recantation of his prior testimony as a newly-discovered fact, which he learned when Watson provided the affidavit on January 15, 2016. Appellant incorporated the memorandum of law in support of his petition, which included Watson's affidavit, into his PCRA petition. When considering these documents together, Appellant pled that he learned that Watson was willing to speak to an investigator on his behalf in March 2015, and sometime thereafter, he learned of Watson's willingness to recant his prior testimony.

We find that the PCRA court erred in finding that the sixty-day period within which Appellant was required to file his PCRA petition began running in March 2015, because the record does not conclusively settle whether Appellant knew at that time that Watson would recant his testimony, or was merely willing to speak with an investigator. We can infer from the record that Appellant learned the content of Watson's affidavit sometime after the alleged phone call, either from the investigator or from Watson himself. It is entirely possible that Appellant did not know that Watson had purportedly lied during the preliminary hearing until January 15, 2016, when he provided the affidavit, as he claimed. Hence, if Appellant could not have learned of this fact until January 15, 2016, or at any time within sixty-days prior to the filing of his PCRA petition, then Appellant's petition would meet the PCRA's

sixty-day timeliness requirement. As the record does not support the PCRA court's finding in this regard, an evidentiary hearing is necessary to determine exactly when Appellant could have ascertained Watson's retraction through the exercise of due diligence.

Moreover, we find the PCRA court erred in finding that Appellant had not exercised due diligence since he had known Watson since 1998, and could have otherwise contacted him during the nine intervening years following his judgment of sentence and the filing of the instant PCRA petition. On the record before us, there is no indication as to the nature or length of Appellant's relationship with Watson, other than the Commonwealth's assertion in its motion to dismiss that the two were long-time friends.

In addition, when considering that Watson averred that Appellant's sister sought him out in 2015, and only then did he consider recanting his testimony, the record does not support the trial court's finding that Appellant could have discovered Watson's recanted testimony earlier than he did. This is especially true since Appellant's conviction was based, in part, on Watson's prior testimony during the preliminary hearing that Walker had identified Appellant as his assailant, and Appellant had no means to directly dispute that testimony. *See Commonwealth v. Medina*, 92 A.3d 1210 (Pa.Super. 2014) (finding defendant could not have discovered recanted testimony through exercise of due diligence where witness "testified

consistently and unequivocally at trial," and defendant had no other factual basis to counter that testimony). Hence, due to the fact-sensitive nature of the due diligence inquiry, an evidentiary hearing is also necessary to determine whether Appellant took reasonable steps to locate Appellant. ***Shiloh***, ***supra***; ***see also Commonwealth v. Davis***, 86 A.3d 883, 890-891 (Pa.Super. 2014) (finding that due diligence does not require a defendant "should have assumed the Commonwealth's witnesses were committing perjury, and the Commonwealth was improperly permitting them to do so.").

Appellant also raises a claim that his petition satisfies the governmental interference exception to the PCRA's time bar. In this vein, the PCRA court determined, similar to its analysis above, that Appellant did not exercise due diligence in obtaining Watson's affidavit. Further, it found that, since Watson provided the information, Appellant did not plead that a government official prevented him from raising the claim.

Appellant maintains that the Commonwealth's knowing reliance on purportedly perjured testimony constitutes a ***Brady*** violation,[1] and that Officer Saccone's actions can be imputed on the Commonwealth. Essentially, Appellant argues that the government actively hid the use of perjured testimony from him, and thus, he could not bring the present action until Watson's affidavit apprised him of the falsified testimony.

---

[1] ***Brady v. Maryland***, 373 U.S. 83 (1963).

Our High Court has previously noted that the "proper questions" with regard to this exception "are whether the government interfered with Appellant's ability to present his claim and whether Appellant was duly diligent in seeking the facts on which his claims are based." *Commonwealth v. Edmiston*, 65 A.3d 339, 345 (Pa. 2013); *Commonwealth v. Hawkins*, 953 A.2d 1248 (Pa. 2006) (noting "although a *Brady* claim may fall within the governmental interference exception, the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by governmental officials, and that the information could not have been obtained earlier with the exercise of due diligence."). Since Watson's affidavit, if proven to be true, may entitle Appellant to relief, and this claim also relies on proof of his due diligence, Appellant may, as noted above, offer such evidence at a hearing on remand.

In summary, our review of the record reveals there are genuine issues concerning material facts that remain unresolved. Thus, we find that the PCRA court erred in dismissing Appellant's petition as untimely without first holding a hearing to determine whether Appellant satisfied an exception to the PCRA's statutory time bar. We direct the PCRA court to hold such a hearing, and to determine whether Appellant has pled and proven such an exception. In light of this disposition, we cannot reach the merits of Appellant's remaining issues at this time.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Musmanno joins this memorandum.

Judge Shogan notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/18