OPINION BY STRASSBURGER, J.:
*1012 Emanon K. Shannon (Appellant) appeals from the October 4, 2016 order which denied his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541 - 9546.[1] We affirm.
On March 10, 2006, a jury convicted Appellant of robbery, aggravated assault, kidnapping, criminal conspiracy, and two firearms violations for his involvement in shooting one victim and kidnapping and holding another victim captive at gunpoint in a motel room. On April 27, 2006, the trial court sentenced Appellant to an aggregate term of 45 to 90 years of incarceration.[2] Appellant filed a direct appeal,[3] and this Court affirmed Appellant's judgment of sentence on August 21, 2007. Commonwealth v. Shannon , 935 A.2d 22 (Pa. Super. 2007) (unpublished memorandum). Appellant did not file a petition for allowance of appeal to our Supreme Court.
On November 11, 2007, Appellant filed pro se his first PCRA petition. On December 6, 2007, the PCRA court appointed counsel, William Shreve, Esquire, to represent Appellant. On April 11, 2008, Attorney Shreve filed a Turner / Finley[4] "no merit" letter with the PCRA court. On April 16, 2008, the PCRA court issued an order granting PCRA counsel's petition to withdraw and giving Appellant notice of the PCRA court's intent to dismiss the PCRA petition pursuant to Pa.R.Crim.P. 907. Thereafter, Appellant filed several pro se documents with the PCRA court. On December 31, 2008, the PCRA court issued an order which appointed Jeffrey B. Engle, Esquire, to represent Appellant, and scheduled a PCRA hearing.
On June 4, 2009, the PCRA court denied Appellant's PCRA petition following an evidentiary hearing, and this Court affirmed that order on August 27, 2010. Commonwealth v. Shannon , 11 A.3d 1040 (Pa. Super. 2010) (unpublished memorandum).
Appellant filed pro se his second PCRA Petition on October 20, 2010, and the PCRA court appointed Jonathan Crisp, Esquire, to represent Appellant.[5] On January 6, 2011, the PCRA court granted Appellant's request for reinstatement of his right to file a petition for allowance of appeal to the Supreme Court nunc pro tunc . Counsel did not file the petition for allowance of appeal, but instead filed a Turner / Finley "no merit" letter with the PCRA court. On February 15, 2011, the PCRA court granted Attorney Crisp's motion to withdraw as counsel, and permitted Appellant pro se to file a petition for allowance of appeal to the Supreme Court.[6]
*1013 On February 8, 2016, represented by Lynn A. Ellenberger, Esquire of the Federal Public Defender's Office, Appellant filed the instant PCRA petition, his third.[7] In that petition, Appellant argues that he is entitled to a "new trial because it has been revealed that various members of the Dauphin County criminal justice system have been identified as receiving emails that have embroiled Supreme Court Justice J. Michael Eakin in proceedings before the Judicial Conduct Board [ (JCB) ] at a time when [Appellant's] post-conviction proceedings were pending." PCRA Petition, 2/8/2016, at ¶ 1. According to Appellant, "individuals involved in his proceedings may also have been privy to additional emails reflecting a bias against African-American persons and persons involved in the criminal justice system." Id . at ¶ 2. Based on the foregoing, Appellant "argues that his claims demonstrate that his trial, direct appeal and PCRA proceedings involved a miscarriage of justice." Id . at ¶ 45. He claims that the "shared, highly offensive emails during the pendency of [Appellant's] post-conviction proceedings case creates the appearance, if not the actuality, of bias against [Appellant's] interests." Id . at ¶ 51. Furthermore, Appellant recognized that his petition was facially untimely, but argued that the PCRA court had jurisdiction pursuant to either the newly-discovered facts[8] exception or the governmental-interference[9] exception to the PCRA time bar. Id . at ¶ 42.
On March 10, 2016, Appellant, through counsel, filed a petition entitled "Motion for the Dauphin County Bench to Recuse Itself and to Disqualify the Dauphin County District Attorney's Office." In that motion, he set forth the following:
Since the filing of the [PCRA petition], [Appellant], who is African-American, has obtained one racially offensive email that contains images and accompanying commentary which makes fun of African-American individuals, communities and sensibilities, and generally contains racially insensitive and inappropriate stereotypes. This one email, which was sent to 123 recipients, has confirmed [Appellant's] suspicions: that many individuals involved in the criminal justice system in Dauphin County-even individuals using a "dauphinc.org" government email address-are privy to this and other racially insensitive emails showing an overall bias against individuals of color, making his trial, appeal and post-conviction proceedings inherently flawed and unconstitutional. Because this racist email was so widely shared, [Appellant] will not be able to have his instant post-conviction [p]etition adjudicated *1014 fairly and impartially. As a result, he moves to recuse the entire Dauphin County bench from presiding over this matter, and moves to disqualify the Dauphin County District Attorney's Office from representing the Commonwealth in this proceeding, which motion should be heard by a newly-appointed judge.
Motion to Recuse, 3/10/2016, at ¶ 2.
According to Appellant, this email was sent to "three of [Appellant's] attorneys, including the attorney who was representing him at the time the email was sent." Id . at ¶ 9. Appellant requested the recusal of the Dauphin County judiciary and district attorney's office because of this "wide-spread racial prejudice in the criminal justice system." Id . at ¶ 17. Moreover, Appellant suggests that this email is evidence "that each and every entity involved in his legal proceedings-bench, prosecution and defense-has been privy to racially-charged emails at the time his legal proceedings were ongoing."Id . However, Appellant acknowledges that the current judge, the Honorable William T. Tully, "has [not] been involved in the inappropriate emails or personally harbors any racial prejudices against [Appellant]." Id . at ¶ 19. Nonetheless, Appellant claims that "[n]o judge in Dauphin County should decide [Appellant's] claims ... [because] no Dauphin County judge can be objectively neutral." Id . at ¶ 20. Similarly, Appellant argues that the Dauphin County District Attorney's office should be disqualified. Id . at ¶ 25. Appellant suggests that due to the allegations against some attorneys in the office, "[a]ny assistant district attorney, even if personally untouched by the allegations of [Appellant's] [p]etition, would have an interest in protecting his or her supervisor's and colleagues' professional interests." Id .
On June 6, 2016, the PCRA court entered an order denying Appellant's motion to recuse. Also on June 6, 2016, the PCRA court filed a notice of intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. The PCRA court concluded that Appellant could not rely on the newly-discovered facts exception because he based his petition on only public records, case law, and newspaper articles. PCRA Court Opinion, 6/6/2016, at 5. Further, the PCRA court concluded that Appellant had failed to establish the governmental-interference exception because that timeliness exception "expressly excludes defense counsel from the definition of 'government officials,' " and the information could have been obtained earlier. Id. at 6.
On June 27, 2016, Appellant filed a response to the PCRA court's Pa.R.Crim.P. 907 Notice. Appellant first attempted to refute the claim that he could have obtained this information earlier. See Response to Pa.R.Crim.P. 907 Notice, 6/27/2016, at ¶ 4. In addition, Appellant pointed out that an email, with the subject line "Prom Night," "was received by actually four individuals who represented [Appellant]: Jeffrey Engle, who was representing [Appellant] at the time the e-mail was sent; William Shreve [ ]; Ari Weitzman [ ]; and Bruce Wolbrette." Id . at ¶ 20 (emphasis in original). Another email, entitled "Sex in the Shower," was sent to Attorney Engle just days before he was appointed Appellant's counsel.[10] Id . at ¶ 32.
Appellant then summarized the newly-discovered facts set forth in his petition.
• various members of the Dauphin County criminal justice system have received emails when [Appellant's] post-conviction proceedings were pending, which emails embroiled Supreme *1015 Court Justice J. Michael Eakin in proceedings before the Court of Judicial Discipline [ (CJD) ].
• the emails described in the JCB Complaint [ ] identify at least 14 individuals as recipients who are or were involved in the criminal justice system in Dauphin County. Two of those individuals represented [Appellant]; one individual appeared on behalf of the Commonwealth in [Appellant's] proceedings. Twelve of those individuals used the "dauphinc.org" email address.
• [Appellant] believed and averred that he was in possession of copies of emails that were described in the JCB Complaint[ ].
• a newspaper article reported Dauphin County District Attorney Marsico, his first assistant, a Common Pleas judge, the county's chief public defender, at least four assistant U.S. attorneys, a senior deputy attorney general and a police chief had received additional racist emails and other emails of inappropriate content that also implicated Justice Eakin.
• based on information and belief, persons involved in [Appellant's] criminal proceedings may also have been privy to those emails reflecting a racial bias and/or a bias against persons involved in the criminal justice system.
Id . at ¶ 39 (citations to PCRA petition omitted).
According to Appellant, he filed his petition within 60 days of learning of this information, because these emails "were first introduced into the public domain at the December 21, 2015 CJD hearing," and he filed his petition on February 8, 2016. Id . at ¶ 44. Appellant also contends that he has satisfied the governmental-interference exception because a government official, Attorney General Kane, did not release this information earlier. Id . at ¶ 52. Finally, Appellant argued that the PCRA court should reconsider the denial of Appellant's motion to recuse. Id . at ¶¶ 58-64.
On October 5, 2016, the PCRA court dismissed Appellant's PCRA petition in an order and accompanying opinion addressing issues raised in Appellant's response to the Rule 907 notice. The PCRA court's order also effectively denied Appellant's motion to reconsider the motion to recuse. See PCRA Court Opinion, 10/4/2016, at 9 ("[T]his Court will not entertain counsel's request to reconsider our denial of [Appellant's] motion for recusal of the Dauphin County bench and disqualification of the Dauphin County District Attorney's office as it is not properly before the court. A motion for reconsideration must be filed within thirty (30) days of the date of the order which is the subject of the request, and must be in a separate pleading.").
Appellant filed a timely notice of appeal. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925. On appeal, Appellant first argues that the PCRA court erred in concluding that Appellant did not satisfy either the newly-discovered facts or the governmental-interference exceptions to the PCRA's time bar. Appellant's Brief at 19-30, 30-33.
We consider Appellant's claim with respect to the newly-discovered facts exception mindful of the following. "This exception requires that the facts upon which such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence." Chmiel , 173 A.3d at 625 (internal quotation marks omitted). "[T]o fall within this exception, the factual predicate of the claim must not be of public record and must not be facts that were previously known but are now presented through a *1016 newly discovered source." Id . Our Supreme Court's recent analysis of this exception in Chmiel is instructive.
At Chmiel's 2002 trial, "the Commonwealth relied upon the testimony of a state police forensic examiner, who opined that hair found at the crime scene was microscopically similar to Chmiel's hair." Id . at 619. On April 20, 2015, the FBI
issued a press release admitting, for the first time, that testimony by FBI analysts regarding microscopic hair analysis in criminal trials was erroneous in the vast majority of cases. The FBI further admitted that it had, over the course of twenty-five years, conducted multiple training courses for state and local forensic examiners throughout the country that incorporated some of the same flawed language that the FBI examiners had used in lab reports and trial testimony.
On June 18, 2015, Chmiel filed a [PCRA petition,] asserting that his conviction and death sentence rested upon unreliable microscopic hair comparison evidence. Recognizing that his petition facially was untimely, Chmiel asserted that the FBI press release constituted a newly[-]discovered fact that satisfied the timeliness exception[.][11]
Id . at 619-20.
The PCRA court rejected this contention and dismissed Chmiel's petition. Our Supreme Court,[12] in a divided opinion, reversed. The Opinion Announcing the Judgment of the Court, authored by Justice Wecht and joined by Justices Todd, Donohue, and Dougherty, concluded that the PCRA court erred by too narrowly construing the newly-discovered facts exception. The Court reasoned that there
are two newly[-]discovered facts upon which Chmiel's underlying claim is predicated, both of which were made public for the first time in the Washington Post article and the FBI press release. First, the FBI publicly admitted that the testimony and statements provided by its analysis were erroneous in the vast majority of cases.... Second, the FBI press release included the revelation that the FBI had trained many state and local analysts to provide the same scientifically flawed opinions.
Id . at 625.
Thus, Justice Wecht concluded that "the information contained within the FBI's press release did not exist in the public domain prior to publication of the press release." Id . at 628. "The FBI's concessions in its press release triggered the sixty-day window within which Chmiel had to file his petition." Id . Because Chmiel filed his petition within the sixty-day window, Justice Wecht's opinion reversed the order of the PCRA court and remanded for further proceedings.
Chief Justice Saylor authored a concurring opinion, which was joined by Justice Baer. While disagreeing on some points in the majority's analysis, he offered the following:
I join the balance of the majority's analysis on the basis of Commonwealth v. Bennett , [593 Pa. 382] 930 A.2d 1264 ( [Pa.] 2007), which decoupled the "facts" contemplated by [subs]ection 9545(b)(ii) of the PCRA from the "claims" serving as explicit bases for statutory post conviction relief.... In this regard, I agree with the majority's determination that the FBI's press release and attendant admissions constitute a newly[-]discovered *1017 fact triggering jurisdiction under Bennett . As I understand Bennett , no further analysis concerning the relationship between the newly-discovered fact and the underlying merits-based claim is necessary or appropriate in the jurisdictional assessment .
Chmiel , 173 A.3d at 629 (Saylor, C.J., concurring) (emphasis added).
Justice Mundy dissented in Chmiel , specifically stating that "[b]y its plain text, the newly-discovered fact exception applies only to facts that are crucial to the underlying claims." Id . at 632 (Mundy, J. dissenting). Justice Mundy goes on to state that "[a]bsent a direct connection between the FBI's press release and [Chmiel's] claim, I cannot agree that [Chmiel] has met his burden under [subs]ection 9545(b)(1)(ii)." Id . at 633 (emphasis added). The Majority disagreed with this premise, suggesting the "direct connection" language goes too far, and cited to Bennett , supra . Id . at n.7. The Court stated the following:
Chmiel's underlying claim is that his conviction rests upon unreliable hair comparison evidence in violation of the United States and Pennsylvania Constitutions. Pursuant to Bennett , all that Chmiel must demonstrate is that "1) 'the facts upon which the claim was predicated were unknown' and 2) 'could not have been ascertained by the exercise of due diligence.' " Bennett , 930 A.2d at 1272 (citing 42 Pa.C.S. § 9545(b)(1)(ii) ). As explained above, Chmiel's claim is predicated upon the newly[-]discovered facts contained within the FBI press release.
Chm iel , 173 A.3d at n.7.
Based on the foregoing, the majority of our Supreme Court believes that while we need not find a "direct connection" between the newly-discovered facts and the claims asserted by a petitioner, the statutory language requires there be some relationship between the two. In Chmiel , the Court concluded that because hair comparison analysis was used at Chmiel's trial, newly-discovered evidence revealing that such hair comparison analysis may be unreliable satisfied the exception.
In the instant matter, Appellant has requested a new trial because individuals involved with the criminal justice system in Dauphin County may have received emails.[13] Appellant acknowledges that only one of his attorneys actually received these emails during his representation of Appellant, and that was during the litigation of Appellant's first PCRA petition. While Appellant names other people involved in the criminal justice system, including judges, public defenders, and assistant district attorneys, he is unable to tie any of these individuals to his case. Furthermore, even if he were able to tie these individuals to his case, Appellant has shown only that they received emails.[14] Thus, Appellant has not established any connection between these emails and his case. In other words, the purported newly-discovered facts asserted by Appellant do not support the claims of bias upon which Appellant's PCRA petition is predicated.[15] Therefore, *1018 we conclude that Appellant has not satisfied the newly-discovered facts exception, and the PCRA court did not err in dismissing Appellant's petition.[16]
We now turn to Appellant's claim that the PCRA court erred by denying Appellant's motion to recuse.[17] ,[18] See Appellant's Brief at 51-58. We review this claim mindful of the following.
An appellate court presumes judges are fair and competent, and reviews the denial of a recusal motion for an abuse of discretion. Nonetheless, an appearance of impropriety is sufficient justification for the grant of new proceedings before another judge.... A jurist's impartiality is called into question whenever there are factors or circumstances that may reasonably question the jurist's impartiality in the matter. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings.
In re Lokuta , 608 Pa. 223, 11 A.3d 427, 435-36 (2011) (internal citations and quotation marks omitted).
Instantly, Appellant sets forth the following.
[Appellant] never alleged that [Judge Tully, himself,] was involved in the inappropriate emails or that [Judge Tully] personally harbored any racial prejudices *1019 against [Appellant]. But any Dauphin County judge hearing this case would necessarily be in a "catch-22." If the court would deny [Appellant] relief, the court would be viewed as accepting and even perpetuating a culture of racist beliefs that are inconsistent with the Constitution and the law. However, if the court would grant [Appellant] relief, the court would necessarily have to denigrate the behavior of a former Pennsylvania Supreme Court Justice, the current District Attorney and a number of his assistants, the Public Defender and a number of his assistants and many, many practicing members of the Dauphin County bar who routinely appear before the court. Simply, no judge in Dauphin County should be put in a position to decide [Appellant's] claims.
Appellant's Brief at 52-53.
In considering Appellant's claim, we observe that his motion to recuse was based upon "one racially offensive email that contains images and accompanying commentary which makes fun of African-American individuals[.]" Motion to Recuse, 3/11/2016, at ¶ 2. Based on this e-mail, which was purportedly sent to members and employees of the Dauphin County judiciary, but not to Judge Tully, Appellant sought recusal of the entire bench. Notably, Appellant made no specific allegations with respect to Judge Tully. In fact, Appellant noted that he "does not allege that [Judge Tully] has been involved in the inappropriate emails or personally harbors any racial prejudices against him." Id . at ¶ 19.
Based on the foregoing, Appellant has not convinced this Court that there is any appearance that Judge Tully is either unfair or incompetent to consider Appellant's PCRA petition. Moreover, these allegations do not convince us that the entire Dauphin County judiciary is biased or prejudiced against African-American defendants. Again, these individuals received derogatory emails. To say that the PCRA court or this Court's denying relief to Appellant implicates us in the terrible stereotypes set forth in these emails is far-fetched in the extreme. We conclude that Appellant has not set forth allegations in his motion to recuse that created an "appearance of prejudice," and therefore the PCRA court did not err in denying Appellant's motion. Lokuta , 11 A.3d at 435-36.
Because Appellant has presented no issue on appeal entitling him to relief, we affirm the order of the PCRA court.
Order affirmed. Petition for Post-Submission Communication denied.
Judge Ransom joins this opinion.
Judge Dubow files a concurring statement.
CONCURRING STATEMENT BY DUBOW, J.:
I concur in the decision of the Majority that the trial court properly dismissed the PCRA petition because the relationship between the "newly discovered fact" and Appellant's underlying trial is highly tenuous. In other words, Appellant was only able to produce one email that was sent during the criminal proceedings and that email was sent to his PCRA counsel while his first PCRA petition was pending. No emails were sent during his trial. It is not, therefore, reasonable to conclude that Appellant suffered bias and was denied his constitutional rights as a result of the email.
I write separately, however, because of my concern with statements that the PCRA court made in its Opinions, attacking Appellant's current PCRA counsel.
I start with the proposition that "[a] judge should show respect, courtesy and patience to the lawyers, parties and all *1020 participants in the legal process by treating all with civility." Pa. Code of Civility, 204 Pa. Code § 99.2(2). "A judge should not impugn the integrity or professionalism of any lawyer on the basis of the clients whom or the causes which he or she represents." Pa. Code of Civility, 204 Pa. Code § 99.2(11). "A judge should not employ hostile or demeaning words in opinions or in written or oral communications with lawyers, parties or witnesses." Pa. Code of Civility, 204 Pa. Code § 99.2(6).
As an initial matter, the PCRA court describes the emails at issue as "alleged racially offensive emails." A review of the emails demonstrates immediately that the emails are not "allegedly" racist. The emails are insulting, insensitive, and propagate offensive racial stereotypes.
I also find the PCRA court's attacks on Appellant's counsel troubling. The PCRA court accuses Appellant's counsel of being "engaged in an apparent attempt to challenge the integrity of the entire Dauphin County Court of Common Pleas based upon pure speculation and conjecture." PCRA Court Opinion, dated 10/4/16, at 9-10. Appellant's counsel is not making up the racist emails; they were sent to two members of the judiciary and thus, it is reasonable for Appellant's counsel to express concern about the Dauphin County Court of Common Pleas. There is nothing wrong with her advocacy in arguing that the emails demonstrate a racial bias that resulted in her client not receiving a fair trial. The PCRA court can and has ruled against her client, as the PCRA court is entitled to do; however, there is no basis for the PCRA court to challenge the integrity of Appellant's counsel for advocating for her client.
The PCRA court also accuses Appellant's counsel of using the PCRA petition for the purpose of "conducting a sweeping fishing expedition in order to advocate a seemingly political/social agenda." PCRA Court Opinion, dated 1/30/17, at 4. I see no fault in Appellant's counsel efforts to determine whether there is evidence of other racist emails that individuals involved in his trial received. Appellant's counsel is aware of some racist emails; it is not unreasonable for her, in her efforts to represent her client zealously, to search for more emails.
Finally, I am concerned with the PCRA court's criticism of Appellant's counsel because news outlets quoted from the PCRA petition. The PCRA court disparages Appellant's counsel by stating that it "is apparent to this [c]ourt that Attorney Lynn Ellenberger is attempting to try her case in a public forum, i.e. the media, rather than through the judicial process." PCRA Court Opinion, 1/30/17, at 5 (footnotes omitted).
First, there is nothing in the record to demonstrate that Appellant's counsel contacted the media, so the trial court's basis for making this accusation is unclear, especially because the news outlet quoted from public documents. And, even if it were true, the PCRA court's disparaging comment is inappropriate. The racist emails that are at issue are a matter of great public concern and raise questions about the integrity of the criminal justice system. The courts should encourage discussion about them, rather than disparage Appellant's counsel for allegedly providing them to news outlets.

Appellant has also filed a petition to allow a post-submission communication asking for permission to analyze a recent Supreme Court decision, Commonwealth v. Chmiel , --- Pa. ----, 173 A.3d 617 (2017). In light of our own analysis of Chmiel , infra , and our disposition, we deny Appellant's petition.

Appellant was represented initially by Bruce Wolbrette, Esquire, of the Dauphin County Public Defender's Office. On September 23, 2005, after the Public Defender's Office recognized a conflict, the trial court appointed Dale A. Klein, Esquire, to represent Appellant.

Appellant was represented by Ari Weitzman, Esquire, for his direct appeal.

Commonwealth v. Turner , 518 Pa. 491, 544 A.2d 927 (1988), and Commonwealth v. Finley , 379 Pa.Super. 390, 550 A.2d 213 (1988) (en banc ).

Appellant wished to challenge Attorney Engle's failure to file a petition for allowance of appeal with our Supreme Court.

The record does not show whether Appellant elected to do so.

Appellant titled his filing a "Petition for Habeas Corpus Relief." The PCRA court properly treated this as a third PCRA Petition. See e.g. , Commonwealth v. Taylor , 65 A.3d 462, 466 (Pa. Super. 2013) ("Issues that are cognizable under the PCRA must be raised in a timely PCRA petition and cannot be raised in a habeas corpus petition.").

42 Pa.C.S. § 9545(b)(1)(ii) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that ... the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]").

42 Pa.C.S. § 9545(b)(1)(i) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that ... the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]").

The other three attorneys also received that email. Id . at ¶ 32.

In support of this position, Chmiel pointed to an April 18, 2015 article in the Washington Post about the FBI press release.

The Supreme Court has exclusive jurisdiction in death-penalty cases.

There is no question that these emails were offensive, inappropriate, and in extraordinarily bad taste.

Receiving an email does not indicate that one has read the email, let alone agrees with the contents of it. Appellant makes no allegation that any of these individuals ever sent these emails, which could indicate that that individual has read and agrees with the content of the email.

Our review of cases involving newly-discovered facts cited by Appellant reveals no case that even comes close to the tenuous connection Appellant is now asserting. See Appellant's Brief at 19-26 (citing Commonwealth v . Cox , 636 Pa. 603, 146 A.3d 221 (2016) (regarding a newly-discovered ballistics report on bullets that were used in several murders for which Cox was implicated); Commonwealth v. Edmiston , 619 Pa. 549, 65 A.3d 339 (2013) (regarding newly-discovered coroner's photographs of the victim and a newly-discovered report on hair analysis that was used at Edminston's trial); Commonwealth v. Burton , 121 A.3d 1063 (Pa. Super. 2015) (en banc ) (regarding a letter from Burton's co-defendant); Commonwealth v. Hackett , 598 Pa. 350, 956 A.2d 978 (2008) (regarding a videotape of the prosecutor in Hackett's case advocating racial stereotyping in jury selection where that same prosecutor struck an Africa-American juror in Hackett's case); Commonwealth v. Brown , 141 A.3d 491 (Pa. Super. 2016) (regarding newly-discovered wiretaps regarding the murder of the police officer for which Brown was convicted); Commonwealth v. Hawkins , 598 Pa. 85, 953 A.2d 1248 (2006) (regarding newly-discovered facts of a plea agreement for a key witness at Hawkins's trial); Commonwealth v. Davis , 86 A.3d 883 (Pa. Super. 2014) (regarding newly-discovered facts related to the investigation into the murder for which Davis was convicted) ).

Appellant also argues that he has satisfied the elements of the governmental-interference exception. See Appellant's Brief at 31-33. However, for the reasons cited, supra , that claim also fails. Again, the governmental-interference Appellant is alleging must bear some rational relationship to the claims Appellant is making. Here, Appellant suggests that Attorney General Kane's failure to reveal these emails sooner satisfies this exception. However, we have already concluded that the emails themselves are not connected in any way to Appellant's case.

Although the PCRA court was not obligated to express its rationale for this denial at the time it decided the motion, the PCRA court should have addressed this issue in its Pa.R.A.P. 1925(a) opinion, as it was raised properly in Appellant's Pa.R.A.P. 1925(b) statement.

The Commonwealth suggests that Appellant has waived this claim by failing to file a notice of appeal from the order denying the motion within 30 days. Commonwealth's Brief at 20-21. In general, "orders denying a motion for recusal are not collateral and, therefore, are not immediately appealable." Commonwealth v. Stevenson , 829 A.2d 701, 704 (Pa. Super. 2003). Appellant was unable to appeal the order denying his motion to recuse as either an interlocutory or collateral order. Rather, he could only raise it as he did, when there was a final order in the case. Thus, we disagree with the Commonwealth's unsupported contention that Appellant waived this claim for failing to raise it within 30 days of the denial of his recusal motion. Accordingly, we may proceed to review the merits of his claim.