J-S09038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OMAR GLASGOW | : | |
| | : | |
| Appellant | : | No. 1021 EDA 2020 |

Appeal from the PCRA Order Entered July 11, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1200461-2001

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED APRIL 13, 2021**

Omar Glasgow ("Glasgow") appeals from the Order dismissing his second Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). ***See*** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court set forth the relevant factual and procedural history as follows:

The evidence adduced at trial showed that on January 26, 2001, [Glasgow] knocked on victim Anthony Randall's [("Randall")] door, entered his apartment in a rage, and demanded money. When Randall did not immediately comply, [Glasgow] hit Randall on the head with a fire extinguisher. [Glasgow's] two companions then entered the apartment[,] and the three men beat Randall until he lost consciousness. [Randall] woke up in the hospital, where he remained for three days. Later that same day, [Glasgow] and his two accomplices pulled up in a car next to victim Reginald Smith [("Smith")] and his girlfriend[,] Yvette Mitchell. [Glasgow] chased Smith down the street and began punching Smith repeatedly[,] while his companion broke a bottle over Smith's head. After Smith fell to the ground [Glasgow] and his cohort continued to kick and stomp Smith's body and head

with their boots.  [Glasgow] and his companion left[,] but returned a few moments later with their third companion.  By this time, a small crowd of approximately 10-20 people had gathered around Smith's unconscious body.  [Glasgow] inexplicably began firing his weapon up and down the street.  Mark Thor[n]ton, who had spoken to Smith on the street just before [Glasgow's] attack, was grazed by a bullet.  [Glasgow] and his companions fled the scene in a car.  Police arrived on the scene shortly thereafter[,] and an ambulance took Smith to the hospital.  Smith never regained consciousness[,] and remained intubated until he died seven months later as a result of head injuries sustained during the beating.

On May 31, 2005, a jury found [Glasgow] guilty of third[-]degree murder, conspiracy, and two counts of aggravated assault.  On July 19, 2005, [the trial court] sentenced him to an aggregate term of 35 to 75 years [of] state incarceration.  Th[is] Court affirmed this judgment of sentence on October 12, 2006.  [**See Commonwealth v. Glasgow**, 913 A.2d 941 (Pa. Super. 2006) (unpublished memorandum).  Glasgow] did not seek review before the Pennsylvania Supreme Court.

On March 24, 2006, while his direct appeal was still pending before th[is] Court, [Glasgow] filed a premature PCRA [P]etition.  This [P]etition was reinstated after review of [Glasgow's] direct appeal was completed.  On January 3, 2007, PCRA counsel filed an [A]mended [P]etition alleging trial counsel's ineffectiveness.  This [P]etition was dismissed on January 8, 2008.  Th[is] Court affirmed this dismissal … [, and] the Pennsylvania Supreme Court denied allocator.  [**See Commonwealth v. Glasgow**, 970 A.2d 467 (Pa. Super. 2009) (unpublished memorandum), **appeal denied**, 8 A.3d 342 (Pa. 2010).]

On June 19, 2014, [Glasgow] filed a *pro se* Petition for Writ of *Habeas Corpus*.  On April 26, 2018, [Glasgow's] counsel[,] Lauren Wimmer, Esquire [("Attorney Wimmer"),]  filed a second PCRA [P]etition[, raising the newly-discovered fact exception to the PCRA's time bar].  … On September 18, 2018, [Glasgow] filed a supplemental [A]mended [P]etition.  On April 24, 2019, the Commonwealth filed its Motion to Dismiss.  On June 11, 2019, [the PCRA c]ourt sent [Glasgow] a Notice of Intent to Dismiss Pursuant to [Pa.R.Crim.P.] 907.  On June 18, [Glasgow] replied to the [Rule] 907 [N]otice.  On July 11, 2019, [the PCRA c]ourt

dismissed [Glasgow's P]etition based upon lack of merit.  On July 30, 2019, PCRA counsel filed a [M]otion to withdraw.[FN1]

On August 26, 2019, [Glasgow's] appellate rights were reinstated[,] *nunc pro tunc*.[FN2]  On that same day, [the PCRA c]ourt granted [Attorney] Wimmer's [M]otion to withdraw and issued an [O]rder that new counsel be appointed.  On December 5, 2019, Matthew Sullivan, Esquire [("Attorney Sullivan"),] was appointed as counsel.  On January 7, 2020, [Attorney] Sullivan was relieved and [Attorney] Wimmer was appointed as PCRA counsel.  [Attorney] Wimmer then filed a PCRA [P]etition, asking that [Glasgow's] appellate rights be reinstated once again.  On March 12, 2020, [the PCRA court] granted relief and reinstated [Glasgow's] appellate rights.  On March 16, 2020, [Glasgow] … filed a Notice of Appeal….

---

[FN1] [Attorney] Wimmer … had been retained as counsel; however, [Glasgow] could no longer afford to pay her after his [P]etition was dismissed.  [Attorney] Wimmer asked that she be permitted to withdraw so that she could be appointed by the court as counsel.

[FN2] No timely direct appeal was filed as a result of this reinstatement.

---

PCRA Court Opinion, 8/31/20, at 1-3.  Glasgow also filed a Pa.R.A.P. 1925(b)

Concise Statement of errors complained of on appeal.

Glasgow now raises the following issues for our consideration:

I. Did the PCRA court err in holding that [Glasgow] is unable to establish jurisdiction under the newly-discovered fact exception pursuant to 42 Pa.C.S.[A.] § 9545(b)(1)(ii)?

II. Did the PCRA court err in denying [Glasgow's] after-discovered evidence claim without an evidentiary hearing[,] where he successfully pleaded and proved all four prongs of the after-discovered evidence test under 42 Pa.C.S.[A.] § 9543(a)(2)(vi)?

Brief for Appellant at 3.

We will address Glasgow's claims together. Glasgow first argues that in March 2018, he was approached by another inmate, DeWayne White ("White"), who told Glasgow that he was present at the time of the fight. *Id.* at 15. White told an investigator that Glasgow had been knocked unconscious before Smith was knocked to the ground and kicked by two other individuals. *Id.* According to Glasgow,

> [o]n the day of the shooting, White was outside with his two children when he noticed a crowd gathering approximately ½ block away. As White approached the crowd, he noticed a bunch of guys fighting and observed [Glasgow] being knocked to the ground. White said that [Glasgow] was the first person knocked to the ground. [Glasgow] appeared to be unconscious; he was not moving. White was 10 to 15 feet away from [Glasgow]. [Randall] was fighting with two other guys and was eventually knocked to the ground. This fight continued on for two to three minutes after [Glasgow] was knocked unconscious. White saw [Glasgow's] friends kicking [Smith] as [Smith] attempted to block their kicks. White heard sirens and left the scene prior to the arrival of the police. [White] moved out of that neighborhood between July and August 2001.

*Id.* at 15-16. Glasgow claims that he filed the instant PCRA Petition within approximately one month of learning of this evidence, and filed his Amended PCRA Petition after receiving an Affidavit from White. *Id.* at 16 n.2. Glasgow asserts that the PCRA court improperly stated that the alleged "new fact" was that Glasgow had been knocked unconscious by Smith; however, Glasgow maintains the "new fact" is "that a disinterested witness possesses first-hand knowledge that [Glasgow] was not involved in the fight that resulted in the injuries that led to [Smith's] death." *Id.* at 18. Glasgow also contends that he could not have discovered this information sooner, because White had

moved out of the neighborhood "almost contemporaneously with [Smith's] passing." *Id.* at 19.

In his second claim,[1] Glasgow again argues that White's testimony could not have been obtained earlier through the exercise of reasonable diligence, because White moved out of the neighborhood a few months after the fight. *Id.* at 22. Glasgow claims that there was no evidence presented at trial that he was unconscious at the time of the fight that led to Smith's death. *Id.* at 23. Glasgow also asserts that this new information would not be used solely for impeachment purposes, as it also provides "a different factual scenario than that presented at [Glasgow's] trial." *Id.* at 23-24. According to Glasgow, this evidence would compel a different result, because a jury could conclude that Glasgow did not commit an overt act necessary to sustain his conviction. *Id.* at 25.

> Our standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

---

[1] In his second claim, Glasgow cites to 42 Pa.C.S.A. § 9543(a)(2)(vi), concerning after-discovered evidence claims under the PCRA. Because Glasgow's PCRA Petition is facially untimely, as we will discuss *infra*, his claim must be considered an attempt to invoke the newly-discovered fact exception to the PCRA's timeliness requirement. *See Commonwealth v. Burton*, 158 A.3d 618, 628 (Pa. 2017) (explaining that an after-discovered evidence claim, raised in a timely PCRA petition, is distinct from the newly-discovered fact exception to the PCRA's time limitations).

*Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa. Super. 2011) (citations omitted).

Initially, under the PCRA, any PCRA petition, "*including a second or subsequent petition*, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1) (emphasis added). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of an untimely petition. *Commonwealth v. Rienzi*, 827 A.2d 369, 371 (Pa. 2003). Here, Glasgow's judgment of sentence became final in November 2006, when his time for seeking allowance of appeal with our Supreme Court expired. *See* Pa.R.A.P. 1113. Because Glasgow filed the instant PCRA Petition on April 26, 2018, his Petition is facially untimely.

Pennsylvania courts may consider an untimely petition if the appellant can explicitly plead and prove one of the three exceptions set forth at 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Any petition invoking one of these exceptions "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). Glasgow invokes the newly-discovered fact exception, which

> requires that the facts upon which such a claim is predicated must not have been known to appellant, nor could they have been

ascertained by due diligence. To fall within this exception, the factual predicate of the claim must not be of public record and must not be facts that were previously known but are now presented through a newly-discovered source.

***Commonwealth v. Shannon***, 184 A.3d 1010, 1015-16 (Pa. Super. 2018) (citations, quotation marks, and some brackets omitted). Further, "[d]ue diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have obtained the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced."

***Commonwealth v. Monaco***, 996 A.2d 1076, 1080 (Pa. Super. 2010) (citations omitted).

The PCRA court addressed Glasgow's arguments as follows:

[Glasgow] relies upon the [A]ffidavit of [] White, a fellow inmate he met in 2017[,] while they were both incarcerated at SCI – Forest. In his [A]ffidavit, White stated that while he was living at 2807 S. 82nd Street, he was outside with his children when he saw several men fighting. [White] stated that he saw [Glasgow] get knocked down by two other men while [Glasgow] was still unconscious. [White] stated that he immediately left the scene as soon as he heard police sirens. White stated that he never told anyone that he witnessed the crime until he ran into [Glasgow] in prison. Indeed, at no time prior to his current PCRA [P]etition did [Glasgow] ever claim that he was unconscious, not prior to trial, not at trial, not post-trial, not on direct appeal, and not in his prior PCRA [P]etition.

Moreover, [Glasgow's] attempt to invoke the after-discovered evidence exception fails[,] as he did not explain how he could not have ascertained White's statement earlier. [Glasgow] simply states that he could not have known about White's presence at the crime scene any earlier because he was, as White asserts, unconscious at the time. However, the evidence adduced at trial showed that a crowd of up to 20 people had gathered during the incident. [Glasgow] does not explain why he did not attempt to identify and contact any of those onlookers to

- 7 -

see if anyone had observed him being knocked unconscious prior to Smith's beating. [Glasgow] does not identify who hit him or who[m] he was fighting with[,] nor does he explain what happened to him after he regained consciousness. [Glasgow] fails to provide any explanation as to why he waited nearly 20 years, and only after meeting White in jail, to put forth the argument that he was unconscious during the attack on Smith. … [D]ue diligence requires some "reasonable efforts" on the part of the petitioner to show that he attempted to uncover facts to support his claim. Here, [Glasgow] made no effort to find witnesses to support his claim that he was unconscious during Smith's attack[,] and did not even put forth this claim until White approached him in prison. Accordingly, no relief is due.

PCRA Court Opinion, 8/31/20, at 6-7.

We agree with the PCRA court's analysis. If Glasgow was unconscious during the fight, he presumably would have known of that fact before his fortuitous encounter with White. As the PCRA court noted, Glasgow failed to explain why he made no attempt to locate additional witnesses. Glasgow acknowledged in his brief that a defense investigator located three witnesses, *see* Brief for Appellant at 22, though he does not explain whether any of those witnesses were ever asked if they had seen Glasgow unconscious. Further, Glasgow repeatedly points to the fact that White moved out of the neighborhood as evidence that he could not have obtained this information sooner. However, as Glasgow himself indicates in his brief, White moved out of the neighborhood a few *months* after the fight. *See id.* at 19, 22. Accordingly, Glasgow failed to establish the existence of a newly-discovered fact that he could not have ascertained sooner through the exercise of due diligence. *See Shannon*, *supra*; *Monaco*, *supra*; *see also*

- 8 -

*Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008) (stating that "[t]he focus of the exception is on the newly discovered *facts*, not on a newly discovered or newly willing source for previously known facts." (citation omitted; emphasis in original)).

Because Glasgow has failed to successfully invoke any of the exceptions necessary to circumvent the PCRA's timeliness requirement, the PCRA court did not err when it dismissed Glasgow's Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2021