J-S44002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUSTY LEE BRENSINGER | : | No. 343 EDA 2024 |

Appeal from the PCRA Order Entered December 29, 2023
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0003251-1997

BEFORE: NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.: **FILED MARCH 4, 2025**

The Commonwealth appeals from the order granting Appellee Rusty Lee Brensinger's Post Conviction Relief Act[1] (PCRA) petition. On appeal, the Commonwealth contends that the PCRA court did not have jurisdiction to grant Appellee relief. After careful review, we vacate the PCRA court's order granting relief and remand with instructions.

The PCRA court set forth the following procedural history:

[Appellee] was convicted by a jury on April 29, 1998, of third-degree murder[2] in relation to the death of 16-month-old Brittany Samuels, the daughter of [Appellee's] then-girlfriend, Michelle Samuels. The medical experts at trial opined that Brittany died due to shaken impact syndrome—commonly referred to at the time as shaken baby syndrome [(SBS)]—and that her injuries could not be explained by two short falls that occurred prior to her death. [Appellee] did not present the testimony of the expert [he]

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 2502(c).

hired because [the expert] agreed that the cause of death was due to shaken impact syndrome. [Appellee] was subsequently sentenced to serve 20 to 40 years in prison. Following the denial of post-sentence motions, [Appellee] filed a timely appeal, and the Pennsylvania Superior Court affirmed the judgment of sentence on December 1, 1999. [*See Commonwealth v. Brensinger*, 750 A.2d 364 (Pa. Super. filed Dec. 1, 1999) (unpublished mem.) (*Brensinger I*).] The Pennsylvania Supreme Court denied allocatur on May 30, 2000. [*See Commonwealth v. Brensinger*, 758 A.2d 1195 (Pa. 2000) (*Brensinger II*).] [Appellee] did not seek a writ of *certiorari* in the Supreme Court [of the United States].

On July 18, 2001, [Appellee] filed his first timely PCRA petition. Following a hearing, the PCRA court denied the petition. [Appellee] appealed, and the Superior Court affirmed the PCRA court on May 13, 2003. [*See Commonwealth v. Brensinger*, 989 EDA 2002 (Pa. Super. filed May 13, 2003) (unpublished mem.) (*Brensinger III*), *appeal denied*, 413 MAL 2003 (Pa. filed Nov. 13, 2003 (*Brensinger IV*).] On April 24, 2015, [Appellee] filed his second petition under the PCRA, which appeared to be untimely on its face. Following a hearing held on May 2, 2016, and July 15, 2016, [the PCRA court] ruled [Appellee] did not meet the requirements of any of the timing exceptions to the PCRA and dismissed the petition as untimely. [Appellee] appealed, and a divided panel of the Superior Court affirmed []. [*See Commonwealth v. Brensinger*, 212 EDA 2017 (Pa. Super. filed March 5, 2019) (unpublished mem.) (*Brensinger V*).] The [Superior] Court subsequently granted [Appellee's] request for reargument *en banc*, and on August 30, 2019, vacated [the PCRA court's] order and remanded the matter with instructions. [*See Commonwealth v. Brensinger*, 218 A.3d 440 (Pa. Super. 2019) (*en banc*) (*Brensinger VI*).] A hearing was held on March 23, 2021, and on September 17, 2021, [the PCRA court] ruled [Appellee] met the "newly-discovered facts" exception and deemed the petition timely filed.[3]

On September 7, 2022, and September 8, 2022, a hearing was held on the merits of [Appellee's] PCRA petition and on [Appellee's] motions to preclude testimony of the

_____

[3] Appellee incorporated, by reference, the entire record of the 2016 evidentiary hearings. N.T. Hr'g, 3/23/21, at 4. The Commonwealth did not present any witnesses at the March 23, 2021 hearing. *See id.* at 5.

Commonwealth's experts. On November 2, 2022, [the PCRA court] granted [Appellee's] motions to preclude the testimony of Dr. Lori Frasier, Dr. Samuel Land, and Dr. Cindy Christian. The Commonwealth filed a motion for reconsideration of that decision, which [the PCRA court] denied on December 5, [2022]. On December 29, 2023, [the PCRA court] granted [Appellee's] PCRA petition, vacated his sentence, and ordered a new trial. On January 24, 2024, the Commonwealth filed the instant appeal.

PCRA Ct. Op., 3/26/24, at 1-3. Both the Commonwealth and the PCRA court complied with the mandates of Pa.R.A.P. 1925.[4]

The Commonwealth raises the following issues for our review:

1. Did [] the PCRA court err in determining that [Appellee] sufficiently pleaded and proved an exception to the timebar under 42 Pa.C.S. § 9545(b)(1)(ii)?

2. Did the PCRA court err and abuse its discretion in granting [Appellee's] PCRA petition where the record does not support the [PCRA] court's determination that [Appellee] presented after-discovered evidence that warranted a new trial?

3. Did the PCRA court abuse its discretion in precluding the Commonwealth from presenting expert witness testimony and evidence at the PCRA hearing?

Commonwealth's Brief at 3.

In its first issue, the Commonwealth contends that the PCRA court erred when it determined that Appellee met one of the enumerated exceptions to the jurisdictional PCRA time bar. *Id.* at 19. Specifically, the Commonwealth argues that the scientific theories upon which Appellee relies are "not new," and "have been available in the public domain and evolving since at least the

_____

[4] In its Rule 1925(a) opinion, the PCRA court incorporates by reference its orders and opinions dated September 17, 2021, November 2, 2022, and January 5, 2024. *See* PCRA Ct. Op., 3/26/24, at 3.

- 3 -

early 2000's." *Id.* at 32-33 (footnote omitted). The Commonwealth further argues that such theories "were discoverable with the exercise of due diligence prior to the filing of his present PCRA petition in 2015." *Id.* at 33 (footnote omitted).

> In reviewing an order denying a PCRA petition, we are:
>
> limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and formatting altered).

"[T]he timeliness of a PCRA petition is a jurisdictional requisite." *Commonwealth v. Brown*, 111 A.3d 171, 175 (Pa. Super. 2015) (citation omitted). A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless the petitioner pleads and proves one of three statutory exceptions. 42 Pa.C.S. § 9545(b)(1). A judgment of sentence becomes final for PCRA purposes "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

Courts may consider a PCRA petition filed more than one year after a judgment of sentence becomes final if the petitioner pleads and proves one of the following three statutory exceptions:

- 4 -

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

In the instant case, Appellee was required to file a petition asserting one of these exceptions within sixty days of the date the claim could have first been presented. **See** 42 Pa.C.S. 9545(b)(2).[5] It is the PCRA petitioner's "burden to allege and prove that one of the timeliness exceptions applies." **Commonwealth v. Albrecht**, 994 A.2d 1091, 1094 (Pa. 2010) (citation omitted and some formatting altered). If a petition is untimely, and none of the timeliness exceptions are met, courts do not have jurisdiction to address the substance of the underlying claims. **Commonwealth v. Cox**, 146 A.3d 221, 227 (Pa. 2016).

---

[5] On October 24, 2018, the General Assembly amended Section 9545(b)(2) and extended the time for filing a petition from sixty days to one year from the date the claim could have been presented. **See** 2018 Pa.Legis.Serv.Act 2018-146 (S.B. 915), effective December 24, 2018. The amendment applies only to claims arising one year before the effective date of this section, December 24, 2017, or thereafter. Because Appellee filed the instant PCRA petition on April 24, 2015, the previous version of 42 Pa.C.S. § 9545(b)(2) applies.

"It is well settled in Pennsylvania that the focus of the exception found at § 9545(b)(1)(ii) is on **newly-discovered facts**, not on newly-discovered or newly-willing sources that corroborate previously known facts or previously raised claims." ***Commonwealth v. Maxwell***, 232 A.3d 739, 745 (Pa. Super. 2020) (*en banc*) (emphasis added). The plain language of the PCRA requires that the newly-discovered facts were "unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii).

To establish the newly-discovered fact exception to the PCRA time bar, a petitioner must demonstrate that "he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence." ***Brown***, 111 A.3d at 176 (citation omitted). Due diligence requires that "the petitioner take reasonable steps to protect his own interests." ***Id.*** (citation omitted). A petitioner must explain why he could not have learned these "new facts" earlier with the exercise of due diligence. ***Id.*** Further, the newly-discovered fact exception at Section 9545(b)(1)(ii) does not require any merits analysis of the underlying after-discovered evidence claim. ***Commonwealth v. Small***, 238 A.3d 1267, 1286 (Pa. 2020).

Our Supreme Court has repeatedly stated that "the newly-discovered facts exception to the time limitations of the PCRA, as set forth in [Section] 9545(b)(1)(ii), is distinct from the after-discovered evidence basis for relief delineated in 42 Pa.C.S. § 9543(a)(2)." ***Commonwealth v. Burton***, 158 A.3d 618, 629 (Pa. 2017). For purposes of the timeliness exception, "the

majority of our Supreme Court believes that while we need not find a 'direct connection' between the newly-discovered facts and the claims asserted by a petitioner, the statutory language requires there be some relationship between the two." ***Commonwealth v. Shannon***, 184 A.3d 1010, 1017 (Pa. Super. 2018) (citation omitted).

In its brief, the Commonwealth alleges that the PCRA court "shirked its responsibility" of identifying when Appellee's purported newly-discovered fact occurred, a factor required to determine whether Appellee has met one of the statutory exceptions to the PCRA time bar. Commonwealth's Brief at 22. As noted by the Commonwealth, in ***Brensinger VI***, an *en banc* panel of this Court set forth the following instructions to the PCRA court:

> In denying [Appellee] PCRA relief, the PCRA court neglected to analyze which scientific principles constitute the "facts" for the purposes of Section 9545(b)(1)(ii). Furthermore, it failed to determine if these "facts" existed in the public domain prior to the experts' use of the principles in forming their opinions, and, if so, **when** these principles entered into the public domain.
>
> Each of [Appellee's] four experts relied upon multiple scientific principles from various studies, papers and statements published between 1934 and 2013 to form their expert opinion. ***See*** N.T., PCRA Hearing, 5/2/16, at 73–82 (Dr. Chris Van [Ee] briefly describing the principles derived from five scientific studies, published between 2001 and 2009, that he utilized to reach his expert opinion), 118-141 (Dr. Julie Mack describing the evolution of five scientific principles, which she learned about between 2007 and 2013, that changed her view on shaken baby syndrome diagnoses), 173–182 (Dr. Zhongxue Hua testifying to two scientific developments between 2001 and 2011 that changed the way he looked at brain injuries), 207–237 (Dr. John C. Galaznik testifying as to the changes in the American Academy of Pediatrics' view on shaken baby syndrome between 2001 and 2009 and to scientific discoveries from studies performed in 2010

and 2012); *see also* [Appellee's] Exhibit 1B, PCRA Hearing, 5/2/16 (report of Dr. Galaznik, expert in the field of pediatrics, referencing 11 scientific articles relied upon in reaching his expert opinion); [Appellee's] Exhibit 2, PCRA Hearing, 5/2/16 (report of Dr. Hua, expert in the field of forensic pathology, referencing articles published in 2011 and 2012 in support of his expert opinion); [Appellee's] Exhibit 3, PCRA Hearing, 5/2/16 (report of Dr. Mack, expert in the field of pediatric radiology, referencing articles and studies spanning from 1934 to 2013 which contain a total of 10 scientific principles she relied upon in reaching her conclusion); [Appellee's] Exhibit D-2, PCRA Hearing, 5/2/16 (report of Dr. Chris Van Ee, expert in the field of biomedical engineering, that relied upon 23 articles and scientific studies published between 1984 and 2012 to reach expert opinion).

Resolution of these questions requires further fact-finding. The PCRA court, sitting as fact-finder, is the proper forum to resolve these questions and to ultimately determine whether [Appellee] met the proof requirement under Section 9545(b)(1)(ii). *See Commonwealth v. Bennett*, 930 A.2d 1264 (Pa. 2007) (remanding to PCRA court to resolve question of due diligence); *see also Burton*, 158 A.3d at 633-34. Therefore, we remand this matter for an evidentiary hearing.

*Brensinger VI*, 218 A.3d at 455 (some formatting altered; emphasis in original).

The PCRA court, following remand from the *en banc* panel, reached the following conclusion:

The science surrounding SBS since the time of [Appellee's] trial can best be described as ever-evolving. It is undisputed that at the time of trial in 1998, if a child presented with a specific constellation, or "triad," of symptoms—retinal hemorrhage, subdural hemorrhage, and brain swelling—there was a presumption in the pediatric medical community that the child was a victim of abuse. It is also undisputed that today, over twenty years later, that presumption no longer exists. **Due to this gradual change over time, [the PCRA court] cannot identify an exact date when the medical community reversed its view of SBS.** However, [the PCRA court found] the following developments to be of significance:

- 8 -

- In 2001, the American Academy of Pediatrics (AAP) issues a policy statement that continues to support the presumption of child abuse in cases where a child presented with the classic SBS constellation of injuries. The AAP specifically noted that the combination of injuries does not occur with short falls. American Academy of Pediatrics, Committee on Child Abuse and Neglect, *Shaken Baby Syndrome: Rotational Cranial Injuries—Technical Report*, 108 Pediatrics 206 (2001). The experts at [Appellee's] 2001 PCRA hearing testified consistently with this policy.

- Also in 2001, a study published in *The American Journal of Forensic Medicine and Pathology* concluded that "an infant or child may suffer a fatal head injury from a fall of less than 3 meters (10 feet)" and the injury could include a "lucid interval and bilateral retinal hemorrhage." Plunkett, John M.D., *Fatal Pediatric Head Injuries Caused by Short-Distance Falls*, 22 Am. Journal of Forensic Medicine and Pathology 1 (2001).

- The 2009 AAP policy statement adopted the term "abusive head trauma" (AHT) in place of "shaken baby syndrome." This change mirrored the conclusions of the statement which recognized that while shaking can potentially cause brain injuries, "blunt impact or a combination of shaking and blunt impact cause injury as well." Christian, Cindy W., M.D.; Block, Robert, M.D.; and the Committee on Child Abuse and Neglect, American Academy of Pediatrics, *Abusive Head Trauma in Infants and Children*, 123 Pediatrics 1409 (2009). This statement was renewed in 2013 and stayed in effect until the AAP issued its 2020 policy statement.

- A 2010 AAP clinical report by Dr. Alex V. Levin and Dr. Christian concluded that shaking was the critical factor in causing retinal hemorrhaging. American Academy of Pediatrics, *Clinical Report – The Eye Examination in the Evaluation of Child Abuse*, 126(2) Pediatrics 376 (2010). This report was renewed in 2015.

- A 2018 AAP clinical report also by Dr. Christian and Dr. Levin concluded that while retinal hemorrhages are "an important indicator of possible AHT, they are also found in other conditions." American Academy of Pediatrics, *The Eye*

*Examination in the Evaluation of Child Abuse*, 142(2) Pediatrics 1411 (2018).

- The 2020 AAP policy statement acknowledges for the first time that, although still rare, short falls can cause serious brain injury and even death. The policy also clarifies that SBS is still considered a valid diagnosis as a subset of an AHT diagnosis. Narang, Sandeep K., M.D.; Fingarson, Amanda, D.O.; Lukefahr, James M.D.; and the American Academy of Pediatrics, Council on Child Abuse and Neglect, *Abusive Head Trauma in Infants and Children*, 145(4) Pediatrics 203 (2020).

The above highlights how the medical community's theories on SBS have slowly evolved—at times, contradicting one another—since the time of [Appellee's] trial and how they will likely continue to evolve in the future. Considering the highly technical nature of these scientific principles, [Appellee's] incarceration for much of these PCRA proceedings, and his limited legal and financial resources, it is hard to imagine how [Appellee] could have know[n] about these "facts." Furthermore, [Appellee], with the help of his family, continued to take reasonable efforts to uncover the facts by seeking help from lawyers and medical experts. These efforts resulted in reports from four experts wherein they all agree that the injuries presented in this case would not have resulted from [abusive] shaking. They further opined that the injuries could be fully explained by the history of short falls reported in this case.

Finally, since the first expert report was authored on April 11, 2015, this is the date "the claims could have been presented." The present petition, filed April 24, 2015, was filed within 60 days.

PCRA Ct. Op., 9/17/21, at 4-6 (citations and footnotes omitted; emphasis added).

Based on our review of the record and the directives of the *en banc* panel of this Court in **Brensinger VI**, we find that the PCRA court erred when it determined that the date Appellee's claims could have been presented was April 11, 2015—which was the date Appellee's first expert report was

authored. *See* PCRA Ct. Op., 9/17/21, at 6. As noted above, the ***Brensinger VI*** Court concluded that it was the scientific principles underlying Appellee's expert reports—not the expert reports themselves—that constituted the newly discovered fact under Section 9545(b)(1)(ii). ***See Brensinger VI***, 218 A.3d at 455.

It is axiomatic that the Superior Court is not a fact-finding court. ***See Commonwealth v. Kapellusch***, 323 A.3d 837, 844 (Pa. Super. 2024) (stating that an appellate court is "generally . . . bound by a PCRA court's . . . fact-finding, so long as those conclusions are supported by the record" (citing ***Commonwealth v. Drummond***, 285 A.3d 625, 633 (Pa. 2022))). We reiterate the directive from ***Brensinger VI*** that, "[t]he PCRA court, sitting as fact-finder, is the proper forum to resolve these questions [of when the scientific principles underlying Appellee's expert reports entered the public domain] and to ultimately determine whether [Appellee] met the proof requirement under Section 9545(b)(1)(ii)." ***Brensinger VI***, 218 A.3d at 455 (citations omitted).

For these reasons, we are constrained to vacate the PCRA court's order granting Appellee PCRA relief and remand for the PCRA court to make factual findings as to when the scientific principles underlying Appellee's after-discovered facts claim entered the public domain. ***See id.*** at 457 (stating that "[t]he PCRA court's focus should be on the date this information became publicly available to [Appellee] and his experts"). After determining when this information became publicly available, the PCRA court shall then determine

whether Appellee exercised due diligence.[6]  *See Commonwealth v. Small*, 238 A.3d 1267, 1286 (Pa. 2020) (noting that the disavowal of the public record presumption does not relieve a PCRA petitioner from burden of exercising due diligence); *see also Commonwealth v. Boyer*, 2024 WL 2815035 at *5 (Pa. Super. filed June 3, 2024) (unpublished mem.).[7,8,9]

Order vacated.  Case remanded with instructions.  Jurisdiction relinquished.

---

[6] Similar to this Court's *en banc* panel in **Brensinger VI**, we emphasize that the instant finding does not resolve the ultimate question as to whether Appellee is entitled to relief.  *See Brensinger VI*, 218 A.3d at 457.  Once the PCRA court makes a factual determination as to when the scientific principles underlying Appellee's expert reports entered the public domain, Appellee still has the burden of establishing "that the facts upon which his claim of a timeliness exception under subsection 9545(b)(1)(ii) is based were **unknown to him** and not ascertainable by the exercise of due diligence."  *Id.* (quoting **Burton**, 158 A.3d at 638 n.23 (emphasis in original)).

[7] We may cite to this Court's unpublished memoranda filed after May 1, 2019 for persuasive value.  *See* Pa.R.A.P. 126(b).

[8] We need not address the Commonwealth's remaining two issues, as they are now moot in light of our disposition.

[9] We note that in his brief, Appellee preserved his arguments that our Supreme Court's decisions in **Commonwealth v. Peterkin**, 722 A.2d 638 (Pa. 1998), and **Commonwealth v. Edmiston**, 65 A.3d 339 (Pa. 2013), were wrongly decided.  *See* Appellee's Brief at 64; *see also Brensinger VI*, 218 A.3d at 457 n.15.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/3/2025